IN THE

# SUPREME COURT OF APPEALS

OF

# VIRGINIA.

---

## Richmond.

SOUTHERN BELL TELEPHONE AND TELEGRAPH CO. v. CLEMENTS.

JANUARY 18, 1900.

1. TELEPHONE COMPANIES—*Safe Poles—Lineman—Contributory Negligence—Case at Bar.*—It is the duty of a telephone company to use ordinary care to provide and keep its poles in a reasonably safe and sound condition for use by its employees, but whether a lineman is guilty of contributory negligence in climbing a pole which has been condemned and is plainly so marked, but the dangerous condition of which is not obvious, is a question of fact to be determined by the jury from all the circumstances of the particular case, under proper instructions from the court. In the case at bar the evidence is such that this court could not disturb a verdict either for the plaintiff or the defendant.

2. MENTAL ANGUISH—*Inferred from Physical Suffering.*—A jury may infer mental anguish from serious bodily harm, causing great physical pain and suffering, without other proof on the subject.

Error to a judgment of the Law and Equity Court of the city of Richmond, rendered December 30, 1898, in an action of tres-

pass on the case, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Affirmed.*

The opinion states the case.

*S. S. P. Patteson,* for the plaintiff in error.

*W. P. DeSaussure,* for the defendant in error.

Keith, P., delivered the opinion of the court.

The Southern Bell Telephone and Telegraph Company operates a telephone exchange in the city of Richmond with poles and wires extending from its central office through the streets of said city. The defendant in error, Clements, was an employee of the company, whose duty it was to climb its poles for the purpose of putting up or removing its wires, when, for any reason, it became necessary to do so. It was the duty of Clements to go out for this purpose under the direction of a foreman of the telephone company. It was the custom of the company, in the discharge of its duty to keep its plant in a reasonably sound and safe condition, to have the poles upon its lines inspected from time to time, and when a pole was found to be defective it was marked by chopping off a portion of the pole on the side next to the street. In December, 1897, as a result of such an inspection, certain poles were thus marked and a report was made to the company, and recorded in its books as follows: " Two rotten poles on Madison street between Main and Cary." Marking the poles is spoken of in the record as a condemnation of them, but it appears that such poles, unless so far decayed as to render their immediate removal imperative, were allowed to remain in position and in the service of the company until the ensuing spring, when the custom was to make such repairs as appeared to be necessary. Clements was present at the inspection

which took place in December, but states that he did not see the mark placed upon the pole, though it was without doubt plainly visible.

In April, 1898, Clements went out with the foreman and other employees of the company to remove wires that were no longer in use, and was directed to climb one of the condemned poles on the line between Main and Cary. He went up the pole, and first cut the ground wire. He states that " it was not at all shaky or weak in any way. It was perfectly firm as any pole I ever went on. I could not reach the two top wires, called the private line, and I went up the pole two steps further and threw my right arm across the arm of the pole and reached up with my left arm and cut the private wire next to that one on the end of the arm; then I cut the one on the end, and when I did that the pole fell instantly, throwing me clean across the street, breaking my arm, hurting my back, and bruising me on the shoulders." For this injury Clements sued the telephone company, and recovered a judgment.

Upon the trial, certain exceptions were taken, which bring under review, first, the instructions given and refused; and, second, the sufficiency of the evidence to warrant the verdict.

The instructions given at the instance of the plaintiff are as follows:

1. " The court instructs the jury that it is the duty of a telephone company to use ordinary care to provide and keep its poles in good, sound and safe condition so as not to expose the lives and limbs of its employees to risks not incident to their employment, and which were not contemplated at the time of the contract of service, and the employee has the right to presume that this duty has been performed, and for injuries to the employees resulting from a breach of this duty without fault on the part of the employee such company is liable."

2. " If the jury believe from the evidence that the plaintiff

was injured in consequence of the negligence of the Southern Bell Telephone and Telegraph Company, the defendant, in failing to provide and keep its poles in a safe and sound condition, so that when the plaintiff in the regular performance of his duty as an employee of the defendant, climbed the pole for the purpose of cutting the wires which he was directed to cut, the said pole fell with him, owing to the fact that it was rotten at its base, whereby the plaintiff received the injury complained of, then the jury must find for the plaintiff, unless they believe that plaintiff was guilty of negligence which contributed to the accident."

3. "Notice of a defect in the apparatus is not necessarily notice of danger in the use of it, and if the jury believe from the evidence that the defendant telephone company, several months before the accident, caused to be inspected the pole which fell with the plaintiff, causing his injury, and found the same to be rotten below the ground, and had a mark put upon the same which indicated that it was defective, said inspection and marking having been done three or four months before the happening of the accident and injury to the plaintiff, but that there was nothing otherwise in the appearance of the pole to indicate that there would be danger in climbing it, and that an employee of ordinary prudence would not have believed that he could be injured by the defect in the pole, if, in the regular discharge of his duty, he should climb it, and that the defendant company gave no warning to the plaintiff that this pole was dangerous, then the injury to the plaintiff is due to the negligence of the defendant telephone company, and they must find for the plaintiff."

4. "If the jury shall find for the plaintiff they may, in estimating the damages, take into consideration both his physical and mental suffering arising from the injury, and his loss of wages for the time he was prevented from working."

It is claimed that these instructions were erroneous, because it appears from the evidence that Clements took service with the defendant company, knowing that it was its custom to continue to use its poles after they had been condemned, and until regular repairs were made and new poles put in at stated intervals of time, and that he continued in its service without objection. It appears from the evidence, however, or there is at least evidence tending to prove, that Clements did not know the unsafe condition of the pole which caused the accident. On the contrary, the tendency of the proof is to show that he was careful and observant to guard himself against accident. In the quotation from his testimony which has been given, it appears that there was nothing in the condition of the pole except the mark which had been placed upon it by the inspectors to indicate its unsafe condition. It so happened that the pole was supported by wires strung parallel with the street, and by other wires which ran into an alley and served as guys to retain it in an upright position. Therefore, when Clements ascended the pole it seemed to be safe. In his own language: " It was perfectly firm as any pole I ever went on," and there was nothing to disclose any cause for immediate apprehension, and there was nothing to warn him of danger until upon cutting the wire on the end of the transverse arm, the pole instantly fell. The company knew the unsafe condition of its poles. Upon its record was the entry: " Two rotten poles on Madison street between Main and Cary." With this knowledge it sent men out with instructions to climb those poles and remove the wires. It is true, that there was a mark upon the poles, which, it may be conceded, Clements saw or should have seen in the exercise of reasonable care for his own protection, but it is also true that the mark relied upon to give him notice of the condition of the pole meant no more than that, in the ordinary course, it should be repaired or replaced, and not that it was the source of immediate or imminent danger. In climbing the pole thus marked he only did what it was custo-

mary for others to do; what he himself had done on frequent occasions, and what the company expected and required of its employees.   Under such circumstances we cannot say that contributory negligence  is  conclusively  established,  but  are of opinion that it was a proper case for the jury.   *Kimball & Fink* v. *Friend*, 95 Va. 125.

What we have said is sufficient to dispose of all the instructions except the fourth.   This instruction is objected to on the ground that there is no evidence that the plaintiff suffered mentally in any way whatever.   We think that where the proof shows that a man is thrown from a telephone pole to the ground, is injured in his arm, hip and back, and  is  made  sick  and nervous, has to be taken home in an ambulance, and is unable to sit up in bed for three or four days, the jury would be warranted in the inference that his condition was attended by some degree of mental suffering.

The telephone company asked for a number of instructions, all of which were given except the sixth, which is as follows:

" If the jury shall believe from the evidence that there was a reasonable inspection of the poles of the defendant telephone company, and that there was a mark put upon such poles as were found to be defective, which could be plainly seen, then they must find for the defendant."

In lieu of this the court gave Instruction No. 7, which is as follows:

" If the jury believe from the evidence that the pole in question was marked so as to show that it was condemned as shown by the evidence, and the plaintiff did see, or by the exercise of ordinary care could have seen, that it was so marked, that of itself would not necessarily make him guilty of contributory negligence in climbing said pole; but if under all the circum-

stances surrounding the case at the time, including the practice of the company in removing poles that were so marked, and of using them until they were so removed, the plaintiff, as a man of ordinary care and prudence, might have foreseen that it was dangerous to climb said pole to perform the duties required of him, then he was guilty of contributory negligence, and in that case he would not be entitled to recover."

We think the instruction given by the court properly propounds the law applicable to the facts of the case before us. As we have already said, those facts do not conclusively establish negligence upon the part of defendant in error, but taken as a whole present a case to be considered by the jury upon proper instructions.

Counsel relied upon the case of *Foley* v. *Jersey City Elec. Light Company*, 54 N. J. (Law) 411. The facts of that case are not fully stated, but in the opinion of the court it is said that "the danger was open and obvious, and the plaintiff could have been in no doubt as to the extent of the risk he assumed." A verdict in his favor was therefore set aside.

In the case before us, we do not think the danger was so obvious and imminent that it necessarily informed the defendant in error of the extent of the risk he assumed. See *Hawley* v. *Railroad Company*, 82 N. Y. 370.

*McGorty* v. *The Southern New England Co.*, 38 Atlantic, 359, differs essentially in its facts from the case before us. It was there held that "a lineman in the employ of a telephone company cannot recover for an injury caused by the fall of a pole on which he was at work, notwithstanding a prior statement by the foreman that he had been up the pole, and that it was safe, where plaintiff knew that it was the rule and custom for each lineman to test the pole for himself, and that suitable appliances were at hand for making such tests, and for securing the pole in case the lineman doubted its safety." A judgment for nomi-

nal damages was in that case given the plaintiff, who appealed, and the judgment was affirmed. In other words, the court held that the facts proved did not establish such negligence against the defendant company as entitled its employee to more than nominal damages; and for a like reason, if in this case the verdict of the jury had been in favor of the defendant, it could not be disturbed, because its facts bring it peculiarly within the province of the jury.

We are of opinion that the judgment should be affirmed.

*Affirmed.*