HECKERT v. CENTRAL DISTRICT & PRINTING TELEGRAPH CO.

(Circuit Court of Appeals, Fourth Circuit.  September 8, 1914.)

No. 1243.

1. MASTER AND SERVANT (§ 264*) — INJURIES TO SERVANT — NEGLIGENCE — PLEADING—VARIANCE.

Where, in an action for injuries to a lineman by coming in contact with a charged span wire leading from a pole, the declaration alleged that defendant negligently permitted the span wire to be attached to the pole "without a proper circuit breaker, or breakers, thereon," the negligence alleged presented two aspects, to wit, that the span wire was not equipped with a circuit breaker, and that it was not equipped with a proper circuit breaker; and there being evidence to sustain both of such allegations, the court erred in directing a verdict for defendant on the ground that the declaration charged that there was no current breaker and that the evidence showed the contrary.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 861–876;  Dec. Dig. § 264.*]

2. MASTER AND SERVANT (§ 264*)—INJURIES TO SERVANT—NEGLIGENCE—ISSUES AND PROOF.

In an action for injuries to a servant, plaintiff is only required to substantially show that the defendant has been guilty of the negligence alleged in the declaration, and is not required to prove that the negligent conduct was precisely as alleged.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 861–876;  Dec. Dig. § 264.*]

3. MASTER AND SERVANT (§ 288*)—INJURIES TO SERVANT—ASSUMED RISK.

Where, in an action for injuries to a lineman by coming in contact with a charged span wire, it was shown that defendant had failed to furnish plaintiff with a suitable place to work, but permitted the span wire to remain in close contact with a telephone wire, so as to render it liable to be heavily charged with a high voltage current, thus rendering it almost a physical impossibility for one to perform the services required of plaintiff without being seriously injured, and that to one looking at the pole from the ground the insulation appeared good, plaintiff did not assume the risk as a matter of law.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1068–1088;  Dec. Dig. § 288.*

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

In Error to the District Court of the United States for the Northern District of West Virginia, at Philippi; Alston G. Dayton, Judge.

Action by Ernest C. Heckert against the Central District & Printing Telegraph Company.  Judgment for defendant, and plaintiff brings error.  Reversed.

See, also, 206 Fed. 653, 124 C. C. A. 441.

Hugh Warder, of Grafton, W. Va. (Warder & Robinson, of Grafton, W. Va., on the brief), for plaintiff in error.

W. S. Meredith, of Fairmont, W. Va., for defendant in error.

Before PRITCHARD and WOODS, Circuit Judges.

PRITCHARD, Circuit Judge.  This is an action at law, instituted by Ernest C. Heckert, plaintiff in error, hereinafter designated as plain-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tiff, against the Central District & Printing Telegraph Company, defendant in error, hereinafter designated as defendant, in the District Court of the United States for the Northern District of West Virginia. The defendant demurred to the declaration, and the District Court sustained the demurrer, dismissed the action, and rendered judgment against the plaintiff. The plaintiff excepted to the ruling of the lower court, and the case came here on writ of error, and on July 11, 1913, this court reversed the judgment of the District Court, and remanded the cause for further proceedings in accordance with the views expressed in the opinion filed by the court at that time.

After the case had been remanded, the defendant entered the plea of the general issue "not guilty," and issue was joined thereon. A jury trial was had, and after the evidence on behalf of both parties had been introduced the plaintiff requested the court to give the jury five several instructions, each of which the court refused, and the plaintiff excepted. Thereupon the defendant requested the jury to return a verdict for defendant, which motion was granted, and to which the plaintiff excepted, and the case comes here on writ of error.

The facts upon which this action is based are to be found in the opinion of this court when the case was heard before. 206 Fed. 653, 124 C. C. A. 441.

[1] The first question that arises is as to whether the court below erred in directing the verdict in favor of the defendant. The learned judge who tried this case in the court below held that there was a variance between the declaration and the evidence, in that the declaration charged that there was no current breaker, and that the evidence showed that there was a current breaker. It should be borne in mind that the declaration charges that the defendant carelessly and negligently permitted the span wire to be attached to the said pole *without a proper circuit breaker, or breakers, thereon.* Among other things, it is charged in the declaration:

"That it was then and there the duty of said defendant to render said telephone pole a safe place upon which to work, by removing, or causing to be removed, said span wire from said telephone pole, or by having proper circuit breaker, or breakers, installed upon said span wire from said telephone pole, or by having proper circuit breaker, or breakers, installed upon said span wire between the said telephone pole of said defendant company and the point where said span wire was crossed by said wires of said Grafton Gas & Electric Light Company, which latter wires were conveying high currents of electricity, dangerous to human life; that the said defendant company wholly disregarded its duty in that behalf, and it then and there suffered and permitted, and for a great space of time before that, to wit, for the space of about nine months, did suffer and permit said span wire to remain attached to said telephone pole in said condition as aforesaid."

And further:

"In consequence of the negligence and carelessness of the defendant in permitting said span wire to be so attached to said pole, or to be attached without proper circuit breaker or breakers, thereon, as aforesaid, he, the plaintiff, came in contact with said span wire," etc.

Thus it will be seen that it was not only alleged in the declaration that the span wire was not equipped with a circuit breaker, but it is also alleged that it was not equipped with a *proper circuit breaker.*

Therefore the negligence as alleged is presented in two aspects, to wit: (a) That the span wire was not equipped with a circuit breaker; (b) that it was not equipped with a proper circuit breaker. There was evidence tending to show that no circuit breaker was attached to the span wire, while other witnesses testified that a circuit breaker or insulator was attached thereto. The fact that the plaintiff was injured by a wire which was heavily charged with electricity would justify the inference that sufficient means had not been employed for the purpose of properly insulating the span wire—the only means by which the accident could have been avoided.

The plaintiff, testifying in his own behalf, among other things, stated that he was injured in the course of his employment and while engaged in the general running of wires, splicing wires, making installations, installing 'phones, stringing wires, etc.; that on the occasion in question he started up the pole, but never thought of any danger; that he caught hold of a "messenger" and his foot came in contact with the span wire and that was all he knew; that the pole was classed as a 45-foot pole, and was perhaps 4 or 5 feet in the ground; that the telephone wires were strung at the top of the pole and the span wire with which his foot came in contact must have been 4 or 5 feet below the top, below the telephone wires and the messenger wire; that the span wire was no part of the telephone system, its object being to support an arc light belonging to the city of Grafton, which maintains its own electric lights; it led across to another city pole, which was practically opposite on the other side of the street, in a northwesterly direction from the telephone pole; that the telephone pole belonged to the defendant, and at the top there were cross-arms on which were fastened wires belonging to the defendant; that he never saw any circuit breaker on the span wire; that if there was one he did not see it. He also testified as to the various operations performed upon himself in consequence of the injury he sustained.

The witness further testified that as a lineman he was required to do all the work hereinbefore mentioned, and to do any other kind of work connected with the business; that he climbed the pole in question in the same manner that he had always performed similar work, and that he supposed that he was perfectly safe, inasmuch as he was performing the work in the usual manner; that he had no knowledge whatever of the fact that the span wire was charged with electricity, nor did he have any knowledge of a defect in the insulation of the span wire.

The witness Woodward, also a lineman for the defendant company, testified that he and the plaintiff were working together on the day plaintiff was injured. Among other things he stated that he had no knowledge that the wire of the Grafton Gas & Electric Company was in contact with the span wire at the time plaintiff was injured; that he did not observe the condition of the wire until after the accident had happened; that he did not see any circuit breaker on the span wire; that the usual method for protecting employés or others in climbing a pole would have been a circuit breaker attached to the span wire at a distance of from 2½ to 3 feet from the pole; that after plaintiff was injured he went to his rescue, and discovered that the wire was touch-

ing the service wire of the Grafton Gas & Electric Light Company, and that it was that which had caused plaintiff to be injured. The witness, being recalled, stated that when he started up the telephone pole he observed smoke coming from plaintiff's hands; that the span wire was charged around the bolt that went through the pole at the point where plaintiff was standing, and that he noticed this after the span wire had been removed.

F. A. Ross, a witness for plaintiff and superintendent of water and lights of the city of Grafton, testified that he and others put up the span wire; that they placed the pole in front of the fruit stand, and then went up the pole a distance of 15 or 20 feet, and drilled a hole in the same; that they had "a temporary insulation—I suppose the bolt in it was 20 inches long, from 18 to 20 inches long, and there was a flat piece of iron made perfectly square, and we had to loop the rope through— goes through the insulator and makes what we call a tie, and we put one of them in each pole, but that was only a temporary arrangement." Being further cross-examined, witness, in response to the question as to whether it was temporary or not, and as to whether there was an insulator on the span wire, said that it was an awful large pole, and he did not suppose that it would throw it out over 3 or 4 inches from the pole; that the insulator on the span wire was not much farther than 3 or 4 inches away from the pole. Witness further testified that the instrument put there was "a circuit breaker in a way. It would have kept any electricity from going through and burning that pole, only it wasn't out—"

At this point counsel for defendant interposed an objection, and insisted that under the pleadings plaintiff was not entitled to show that it was an improper circuit breaker. Counsel for plaintiff also asked if it would have protected a lineman in going up the pole, to which counsel for defendant objected, whereupon the court said:

"I will sustain the objection. An allegation of the declaration is that there was no circuit breaker."

Witness Warder was introduced, and, among other things, stated that he was a lamp cleaner for the city of Grafton; that he had been in the employ of the city since 1910; that the span wire had been installed about a year, or perhaps about two years, before the accident occurred. Counsel for defendant, among other things, asked the witness as to whether he had installed a circuit breaker on the span wire, and the witness in response said:

"Yes; there was a circuit breaker or insulator. I don't know which you would term it."

The court then stated that it would modify its ruling and permit defendant to inquire as to the character of the circuit breaker, whereupon witness Ross was recalled and testified as follows:

"Q. Was this circuit breaker calculated under any ordinary conditions to protect that line from being charged? A. You mean the span wire? Q. Yes; I mean the span wire. A. Why, no; it was only put there to protect the pole against burning, in case of the wire becoming charged. Q. Well, would it prevent the line itself from being charged? A. No, sir. Q. Why not? A. Because for the distance between the two, if any live wire would get on the span wire, it would charge it anyway. Q. You mean to say that if a live

wire would strike this line anywhere except on this circuit breaker it would charge it?   A. Yes, sir.   Q. Then the circuit breaker was wholly useless? A. It is not a circuit breaker.   It is simply an insulator, and it was put in there—the insulator was put in there—to protect that pole from being burned in case the line would happen to touch this span wire and charge it."

Thus it will be seen that the evidence tended to show that the span wire *was not equipped with a proper circuit breaker,* if indeed a circuit breaker was attached thereto.

While the evidence of other witnesses tended to show that an insulator, or what they called a "circuit breaker," was attached, yet there was also evidence tending to show that, even if a circuit breaker had been attached at the point where it is shown that this insulator or circuit breaker was attached, it would not have been sufficient to have protected the span wire, and thus to have rendered it incapable of injuring the plaintiff.

[2] As we have already stated, the court based its action in directing a verdict for the defendant upon the ground that there was a fatal variance between the evidence and the allegation contained in the declaration, to wit:  That there was "no circuit breaker."   We are of opinion that the plaintiff was only required to substantially show that the defendant was guilty of the acts of negligence alleged in the declaration, and that he was not required to show that the negligent conduct of the defendant was precisely as alleged in the declaration.

In the case of Deputy v. Kimmell, 80 S. E. 920, recently decided by the Supreme Court of West Virginia, the court, among other things, said:

"In order to recover, it is unnecessary for plaintiff to prove literally the acts of negligence averred in the declaration.  If the allegations are substantially proved, this is sufficient.  Hence an instruction, in any action of case for personal injury, which tells the jury that it cannot find for plaintiff, unless it believes from the evidence 'that the defendant was negligent in the very manner set out in the declaration,' is erroneous, and should be refused."

However, as we have stated, the evidence as to whether there was a circuit breaker is conflicting.  The plaintiff says that he saw no circuit breaker, and in this respect he is corroborated by witnesses Woodward and McFarland.  The witness Ross, whose testimony we have quoted at some length, states positively that there was no circuit breaker, and that he only put in an insulator so as to protect the pole in the event that the line should happen to touch the span wire.

While it may be properly said that the evidence of the plaintiff is negative in its character, yet the witness Ross, who assisted in attaching the instrument to the wire, stated that it was not a circuit breaker. Witness Bennett testified that there was either a circuit breaker or an insulator.  However, the evidence of this witness was excluded by the court upon the theory that he had not qualified as an expert, which would render his testimony as to whether there was a proper circuit breaker of little value, to say the least of it.

The witness Charles Morgina, who testified on behalf of the defendant, did not say that there was a circuit breaker; he described it as a porcelain knob attached 3 or 4 inches distant from the pole.

There was evidence tending to show that an instrument of this kind

attached 3 or 4 inches from the pole was practically worthless; that it was attached simply for the purpose of keeping the pole from burning. Therefore there was a direct conflict of evidence as to whether there was a circuit breaker, while, on the other hand, the evidence that there was not a "proper circuit breaker" tends strongly to establish the contention of the plaintiff.

As we have already said, it follows that upon the pleadings and the evidence there were two questions of fact, to wit: (1) As to whether there was a circuit breaker; and (2) as to whether there was a proper circuit breaker—and it was the province of the jury to determine as to whether the plaintiff was correct in his contention as to either of those questions.

It is well settled that where the pleadings and evidence are such that more than one inference may be drawn therefrom, and about which reasonable men might reasonably differ, it is the duty of the court to submit the same to the jury for their determination. Therefore the action of the court in refusing to grant the prayers for instructions which relate to this point was erroneous.

The court below also held that under the circumstances of this case the plaintiff assumed the risks incident to his employment, and was negligent in climbing the pole "and in coming in contact with the live wire, charged by contact with the other company's wire, and which contact, apparent to any one, could have been seen by the exercise of ordinary care." The evidence, as we have already stated, tends to show that the plaintiff had no knowledge whatever of the fact that the span wire was charged with electricity. It further appears that he was engaged in the performance of a duty which must necessarily have been performed in the manner in which he attempted to perform it on this occasion, and the plaintiff is sustained as to this contention by the testimony of other witnesses who were acquainted with the situation at the time he was injured.

[3] It was the duty of the defendant to furnish a safe and suitable place for the plaintiff in which to work. It is obvious that to permit a span wire to remain in close contact with the telephone wire, as in this instance, would render the same liable to be heavily charged with an electric current, thus rendering it almost a physical impossibility for one to perform such services as were required of plaintiff without being seriously injured; therefore, as was stated in a former opinion of this court, if the defendant carelessly and negligently failed to perform the duty he owed plaintiff in this respect, that he could not be deemed to have assumed such risk, inasmuch as the same would be due to the negligence of the defendant. Chesapeake & Ohio Railway Co. v. Proffitt, 218 Fed. 23, 134 C. C. A. 37, decided at this term of the court, and the case therein cited. Of course, if the danger was open and obvious, and was known to the plaintiff, or could have been known by the exercise of due diligence, then he would not be entitled to recover.

The learned judge who heard this case in the court below, in the language which we have just quoted, stated that the "contact was apparent to any one, and could have been seen by the exercise of due diligence." We fail to find any evidence which shows that the dangerous condition of the wire was open and obvious. It further appears, from the testi-

mony offered by the defendant, that to one looking at the pole from the ground the insulation appeared to be good.   In the case of Humphreys v. Raleigh Coal & Coke Co., 80 S. E. 805, the Supreme Court of Appeals of West Virginia very aptly said:

"The silent, latent, deadly electrical power of a live wire, giving no warning of its' presence through hearing, sight, or other faculty, renders it so highly dangerous that its use carries an extremely high degree of care.   It is the concealment of its force inherent in its very nature that makes it so dangerous.   Its presence is undiscoverable by any of the five senses, other than that of feeling, and to discover by that is to place yourself within the deadly power of the thing itself, and suffer the injury, for there is a seizure in the very instant of contact.   Therefore to use it at all by means of an uninsulated wire or other appliance, where the user knows any person may for any reason come in contact with it, without knowledge of the use to which the appliance is devoted, is tantamount to the placing of a deadly mine or trap, however free the user may be from wrongful intent.   Runyan v. Water & Light Co., 68 W. Va. 609, 71 S. E. 259, 35 L. R. A. (N. S.) 430; Thornburg v. Railroad Co., 65 W. Va. 379, 64 S. E. 358; Bice v. Electrical Co., 62 W. Va. 685, 59 S. E. 626; Thomas v. Electrical Co., 54 W. Va. 395, 46 S. E. 217; Snyder v. Electrical Co., 43 W. Va. 661, 28 S. E. 733, 39 L. R. A. 499, 64 Am. St. Rep. 922."

The evidence bearing upon this point also raised a question which should have been presented to the jury.   In the case of Norfolk, etc., R. Co. v. Ward, 90 Va. 687, 19 S. E. 849, 24 L. R. A. 717, 44 Am. St. Rep. 945, the court in discussing this phase of the question said:

"Where there is any doubt whether the employé was acquainted, or ought to have been acquainted, with the risk, the determination of the question is necessarily with the jury."

Also in the case of Southern Bell, etc., Co. v. Clements, 98 Va. 1, 34 S. E. 951, the Supreme Court of that state said:

"Whether a lineman is guilty of contributory negligence in climbing a [telephone] pole which has been condemned and is plainly so marked, but the dangerous condition of which is not obvious, is a question of fact, to be determined by the jury from all the circumstances of the particular case, under proper instructions from the court."

Also in the case of Settle v. St. Louis & S. R. R. Co., 127 Mo. 336, 30 S. W. 125, 48 Am. St. Rep. 633, the court said:

"Unless the defect" in machinery or apparatus "is so manifestly and glaringly hazardous that the court could declare, as a matter of law, that a person of ordinary prudence would not use it," the question should be submitted to the jury.

The court having failed to submit this question, as well as the other questions to which we have referred, to the jury for its consideration, it follows that the judgment of the lower court should be reversed, and the case remanded for further proceedings in accordance with the views herein expressed.

Reversed.