AMY ROWE, Admx.

*v.*

THE TAYLORVILLE ELECTRIC COMPANY.

*Opinion filed December 22, 1904.*

1. ELECTRIC COMPANIES—*the use of electricity for profit requires care commensurate with danger.* Electricity is a silent, deadly and instantaneous force, and a company handling it is bound to know the dangers incident to its use in public streets, and while such a company is not an insurer of the safety of the public, it is bound to guard against accidents by care commensurate with the danger.

2. SAME—*when recovery cannot be had for defective insulation.* Defective insulation of an electric light wire does not give rise to an action for negligence against the electric light company for the death of a telephone lineman who, with full knowledge of the conditions and dangers, allowed a telephone wire to come in contact with an electric light wire, thinking there was no current turned on.

3. SAME—*company owes no duty to public to give warning before turning on current.* Failure of an electric light company to blow its whistle before turning on its current, as it was in the habit of doing to warn its own employees, is not a breach of duty towards other persons, where there is no proof of an agreement or understanding that the warning is to be given for their benefit or that the company knew they were relying thereon.

APPEAL from the Appellate Court for the Third District;—heard in that court on writ of error to the Circuit Court of Christian county; the Hon. TRUMAN E. AMES, Judge, presiding.

SHARROCK & GRUNDY, and LANE & COOPER, for appellant.

PERCY WERNER, (J. E. HOGAN, of counsel,) for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Albert Rowe was employed by the Central Union Telephone Company, in the city of Taylorville. On January 4, 1902, the appellee, the Taylorville Electric Company, owned

and operated an electric light plant in said city which had been in operation about eight years. The telephone company had secured a license to erect telephone poles, with wires, on the streets of said city, and on said day Rowe and five other employees of that company were at work stringing wires on poles in North street. The poles were set on the same side of the street as those of the electric company, but were higher. The poles of the electric company were twenty-five feet high and those of the telephone company thirty feet, so that the telephone wires would be about five feet above the electric wires. When the electric wires were not carrying any current of electricity there was no danger in working above them, but when the current was turned on it was dangerous. They were calculated to carry a current of one thousand volts, and five hundred volts would be fatal to one coming in contact with them. In stringing the telephone wires one of them broke and Rowe went down a pole and brought it up again. He was on the pole about twenty-five feet from the ground, stretching the wire, when it came in contact with the parallel electric light wire in which there was a current of electricity, and he received a shock causing him to fall from the pole upon the frozen ground. His hands were badly burned, his neck was broken and he was dead when his companions reached him. His widow and administratrix, the appellant, sued the appellee in the circuit court of Christian county for damages resulting from his death. In the first count of her declaration she charged defendant with negligence in permitting its current of electricity to escape and be transmitted to the telephone wire which the deceased was handling. The second count charged defendant with negligence in turning on the current of electricity without giving a customary warning by a whistle from its engine. The third alleged that the defendant knew that the employees of the telephone company only did their work when the current was not turned on, and notwithstanding this knowledge neglected to give warning of its intention to turn on the cur-

rent. The fourth charged negligence in using imperfectly insulated wires. The fifth charged negligence, generally, in constructing, maintaining, managing and operating the electric light plant. An additional count set forth that it was the custom of defendant to sound a whistle five minutes before turning on its current and that the telephone employees relied upon such custom, and it charged negligence in turning on the current without warning. The plea was not guilty. At the conclusion of all the evidence the court, at the instance of the defendant, directed the jury to return a verdict of not guilty. A verdict was returned accordingly, upon which judgment was entered. Upon a writ of error from the Appellate Court for the Third District the judgment was affirmed. The Appellate Court granted a certificate of importance and an appeal to this court.

The question to be determined is whether the court erred in not submitting the issue to the jury and in directing a verdict of not guilty. That depends upon whether there was evidence fairly tending to prove a cause of action against the defendant. The evidence tended to prove the following facts: The defendant had operated its electric light plant in the city of Taylorville for eight years, and the wire at the place of the accident was second-hand when it was put up. The insulation of the wire was old and worn generally, and it was off and the wire was bare at a place called a "joint," where the accident occurred. The electric light current was not turned on at all times, but was turned on at different hours in different seasons and on clear or cloudy days. When it was dark and cloudy it was kept on all day, and on clear days at the time of year this accident occurred it was turned on about four o'clock in the afternoon. The day of the accident was clear and bright. It had been the custom of the defendant to blow its whistle about five minutes before turning on the current to notify its employees, so that if they were doing anything about the wires they would finish it and get away before the current was turned on. The acci-

dent occurred about fifteen minutes before four o'clock, according to the watch of one of the men who looked at it at the time.  The telephone men did not expect that the electric current would be turned on the wires until four o'clock and they expected to get through before the current started.  There was no signal given before turning on the current on this occasion.  Sometimes the telephone men would telephone the electric light plant or secretary and treasurer to learn what time the current would be turned on, but they also depended on hearing the whistle, and were governed as to the time to quit work by that signal.   Rowe had been working for the telephone company about six months and was experienced in the business.  When the telephone men knew that the electric wires were carrying the current, they had means, by the exercise of extra care, of keeping the telephone wires off the electric wires, and they all understood the danger from having the wires come in contact with each other.   It was known to the manager of the defendant that telephone wires were being put up in the streets, and about three-quarters of an hour before the accident the engineer of defendant passed near where the telephone men were at work and in view of them, but there was no evidence that the defendant or any of its employees knew that the men were still at work at the time the current was turned on.  The telephone men had no intention of continuing their work when the electric current was on the wires, and they were watching for the signal of the whistle and also looking at their watches to learn the time of day.  One of the gang of men had just looked at his watch and put it back in his pocket when the accident occurred.  Rowe was supplied with a safety strap by which to fasten himself to a pole when working with both hands, and he was not using it at the time the accident occurred.

It is contended that the uncontradicted evidence proved Rowe to have been guilty of negligence in not using the strap to fasten himself to the pole when using both hands

with the wire. If he had used it he would not have fallen, and his neck was broken by the fall of twenty-five feet upon the frozen ground, but there was evidence tending to prove that the electric shock was fatal. If the shock was sufficient to kill him it was immaterial whether he fell or not. The court would not have been justified in directing a verdict on the ground that he was guilty of contributory negligence in not using the strap.

The other question is whether the evidence tended to prove actionable negligence on the part of the defendant, and the first question discussed by counsel is whether the condition of the electric wires, as to insulation, tended to prove such negligence. Counsel for appellee say that the duty to maintain perfect insulation does not extend to the entire system of wires, but only to places where the defendant might reasonably anticipate that persons would go for work, pleasure or business; that the duty did not extend to wires strung twenty-five feet above the ground simply because there was a possibility that some person in pursuit of his own business would bring himself in contact with a wire, and that there was no duty to keep wires in safe condition as to telephone employees entering upon the premises on their own business. Electricity is a silent, deadly and instantaneous force, and one who uses it for profit is bound to exercise care corresponding to the dangers incident to its use. One duty is the insulation of its wires, but that duty does not extend to the entire system. No duty of that kind is imposed on the owner on his own premises as to trespassers or bare licensees, who are neither invited upon the premises nor there for purposes of business with the owner. The defendant was not bound to assume that persons would come upon its private premises who were not invited there or brought there by business and thereby expose themselves to injury. But the streets of the city were not the private premises of defendant. The streets belong to the public, and the public, generally, have a right to use them. As a matter

of fact, the defendant must be held to have anticipated that the public would use the streets as they had a right to do, and also the employees of the telephone company would be working in the streets in the business of that company and might come in proximity to its wires in attending to their duties. The defendant was not an insurer of the safety of the public, but it was bound to know the dangers incident to the use of the streets by it and to guard against such dangers by the exercise of care commensurate with them.

Counsel rely upon the decision in *Hector* v. *Boston Electric Light Co.* 161 Mass. 558, as sustaining the doctrine contended for, but it clearly does not. We explained in *Commonwealth Electric Co.* v. *Melville,* 210 Ill. 70, that in the case referred to the plaintiff received his injuries while on a roof of a building where he had no right to be and was neither invited nor licensed to be, and we decided that a company operating wires carrying a dangerous current of electricity owes a duty to exercise reasonable care to prevent injury to others, wherever they have a right to go. The duty extends to every place where persons have a right to be, whether for business, convenience or pleasure. The condition of the electric wire as to insulation tended to prove negligence on the part of the defendant which would give rise to a cause of action for an injury to one not aware of the danger, who had a right to rely upon the wire being properly insulated. The evidence, however, was that the telephone men were familiar with the danger and had no intention of working when the electric current was on the wires. The evidence was uncontradicted that they were not relying upon the performance of any duty to insulate the wires and fully knew and understood the dangers arising from the defective insulation. If they knew that the electric wire was carrying a deadly current, and Rowe, with full knowledge of the conditions and dangers, allowed the telephone wire to come in contact with the electric wire, there could be no recovery on the ground that the insulation was defective. It

was only on account of his ignorance of the current having been turned on that the accident occurred.

The only question, therefore, is whether the failure of the defendant to blow the whistle before turning on the current rendered it liable in the case. The signal which the defendant was in the habit of giving by blowing the whistle was for the benefit of its own employees, so that if they were at work about the wires they would hurry and get through before the current was turned on. There was no evidence tending to prove any agreement between the companies with respect to giving signals or any knowledge on the part of the defendant that the telephone men were relying upon them. Neither was there any evidence of notice to the defendant that the telephone men were at work at that time. If there was a duty of the defendant to give a warning it was one which extended to everybody, and required the blowing of the whistle to give general notice that it was about to start up the plant. It would not be contended that there was such a duty as that, or that the defendant would be guilty of negligence in failing to give such notice to the public at large. The telephone men did not expect the plant to start until four o'clock and they were calculating to finish their work before that time, although they also expected to hear the whistle before the current was turned on. In the absence of any proof tending to show an agreement or understanding that the signal would be given for the benefit and safety of the telephone men or that the defendant knew they were relying upon the whistle as a warning, we do not think there was a duty to give the warning. If there was no duty the telephone men had no legal right to rely upon notice by the whistle, and a failure to give it did not charge the defendant with negligence. It follows that the court did not err in giving the instruction.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*