# CHARLESTON.

### Runyan v. Kanawha Water & Light Company.

Submitted January 27, 1910.   Decided February 7, 1911.

1. Electricity—*Personal Injury—Insulation of Wires.*
   Workmen have right to be on any part of an iron bridge in necessary work in painting it, and an electric light company having its wires on the bridge must keep them properly insulated, so that such workmen coming accidentally in contact with the wires may not be injured thereby.

2. Same—*Insulation of Wires—Negligence—Presumptions.*
   If a person, at a place where he has right to be, is injured by contact with an electric light wire, there is a *prima facie* presumption that the wire was not properly insulated, which presumption, unless rebutted, will establish negligence in the owner of the wire in failing to have a properly insulated wire.

3. Trial—*Verdict—Special Findings—Conflict with Verdict.*
   A special finding, to prevail over a general verdict, must be irreconcilably inconsistent with it, and clearly exclude every conclusion that would harmonize it with that verdict.

4. Same—*Verdict—Interrogations.*
   An interrogatory under § 5, chapter 131, Code 1906, must put only questions of fact, not of law. It cannot ask an opinion from a jury, not asking as to facts on which such opinion may rest, and a finding upon such defective interrogatory has no force to overrule a general verdict.

5. Same—*Verdict—Interrogatories—Sufficiency.*
   Interrogatories requiring mere speculation by the jury as to what might or might not have been in a certain contingency should not be submitted.

6. Same—*Interrogations—Sufficiency.*
   Answers to interrogatories should be direct, definite and complete.

7. Same—*Verdict—Interrogatories—Sufficiency.*
   Interrogatories must not assume facts controverted in the case.

8. Electricity—*Electric Light Companies—Care Required—Insulation of Wires.*
   An electric light company is bound to use a high degree of care to keep its wires safely insulated at places where persons may be lawfully in close proximity to them, and accidentally come in contact with them.

68 W. Va

Error to Circuit Court, Kanawha County.

Action by C. D. Runyan, administrator of Walter Runyan, against the Kanawha Water & Light Company. A verdict for plaintiff having been set aside, he brings error.

*Reversed, and Judgment Rendered on the Verdict.*

*Littlepage, Cato & Bledsoe,* for plaintiff in error.

*Chilton, MacCorkle & Chilton,* for defendant in error.

BRANNON, JUDGE:

The Kanawha Water & Light Company, a corporation furnishing electricity for public consumption in the city of Charleston, had its wires on a bridge over the Kanawha river for conveyance of electricity. Walter Runyan was an employe of the bridge company engaged in painting the bridge, and while so employed came in contact with an electric wire, and was so badly burnt by the electricity that he died. His administrator sued the Kanawha Water & Light Company, and recovered a verdict for $5000, and the court having set the verdict aside, the plaintiff comes to this Court.

The claim is that a wire was not insulated safely, and Runyan's contact with it is the source of his death. An important question is made by the contention of defendant that the place where Runyan met his death was where the Light company was under no duty to insulate its wires, and where Runyan had no right to demand such insulation, because that place was not a place where any one had right to go for work, business or pleasure. It is law that such a corporation is not compelled to insulate its wires everywhere, but only at places where people may go for work, business or pleasure, where they may reasonably be expected to go. *Thomas* v. *Electrical Co.,* 54 W. Va. 395. The bridge is a steel bridge having crossbeams some fifteen to seventeen feet above the floor of the roadway of the bridge. Standing on one of these cross beams are wooden cross arms about ten inches high, and on these arms the wires were strung near the middle of the bridge. Runyan was engaged in painting, at just what point does not appear. For some reason he was walking on a crossbeam, and came in contact with an electric wire and was discovered hanging over it on his stomach, his clothes on fire, his body burning, a wire under him on the beam, forming

a short circuit, when the wire separated from melting, and fell, and Runyan fell to the floor. The claim is that the electric company had placed its wires far away from the roadway, out of danger to the public, and it could not anticipate that any one would be walking on a beam high up in the bridge. But we say that painting or repairing of this large, costly bridge is indispensable, and the defendant was bound to expect that workmen would be upon it. Under the case of *Thornburg* v. *Railroad Co.,* 65 W. Va. 379, we say that as Runyan was there engaged in painting he was lawfully there in work. It has been held that persons going on roofs of houses to do work, injured by defective wires, may recover, though people do not frequently go on roofs. *Fitzgerald* v. *Edison,* 86 Am. St. R. 732, is the case of a painter. *Girandi* v. *Elec. Co.,* 47 Am. St. R. 114 (28 L. R. A. 596) ; Joyce on Electricity, § 664; *Clements* v. *Louisiana Co.,* 32 Am. St. R. 348 (16 L. R. A. 43).

The claim for recovery by the plaintiff rests on the theory that the electric wire was not well insulated, as a portion of the wire was uncovered by insulating material. The defense denies this and says that no adequate proof of negligence has been made. We could dispose of this matter at once by saying that there was evidence that the wire was not insulated, and the general verdict imports that it was not, and by saying that a special interrogatory propounded to the jury the question whether the defendant failed to perform any duty which it owed to Runyan, and if so what and in what way, the answer being, "Yes, by failure to insulate the wire." But beyond this the doctrine of *res ipsa loquitur* proves negligence *prima facie,* and aids the oral evidence. Our cases surely apply this rule in such cases, holding when injury comes to a person by contact with an electric wire at a place where he has a right to be, and where there should be good insulation, it is a case of negligence rendering the company *prima facie* liable. We need not go over this principle again. *Snyder* v. *Elec. Co.,* 43 W. Va. 661; *Thomas* v. *Elec. Co.,* 54 *Id.* 395; *Thorning* v. *City Co.,* 65 *Id.* 379, and other cases. There is no room to say that this is not the rule everywhere. *Winkleman* v. *Kansas C. Co.,* 110 Mo. App. 184 (85 S. W. 99), says that the fact of injury is *conclusive* evidence of want of insulation. This goes very far, I suppose on the idea that if safely insulated accident could not happen

from the wire. I cite for this doctrine *Alexander* v. *Nanticoke Co.,* 209 Pa. 571 (58 Atl. 1068), and 113 Am. St. R. 987, 999.

The rule is stringent; but people must and do go about over the face of the earth, and those who use dangerous things must carry the burden, however heavy or costly, of so using them as to save life.

The main defence in the case is contributory negligence. The general verdict finds against that defence; but defendant insists that that verdict is overruled by a finding in answer to an interrogatory. This has given us some perplexity, and is the question of gravity in the case. The interrogatory is this: "If Walter Runyan had been careful, considering the knowledge he had of the wires, would he have been injured?" The answer is, "We think not." Is this inconsistent with the general verdict so as to overrule it? It must be so inconsistent that both cannot stand together. If possible they must be construed so as to harmonize; or rather, as applied to this case, we must be able to say that the finding finds a fact which inevitably overthrows the general verdict. It must exclude every conclusion that would authorize a verdict for plaintiff. *Peninsular Land Co.* v. *Ins. Co.,* 35 W. Va. 666. As a practical question in this case, Does this finding find as a fact that Runyan was guilty of contributory negligence defeating the action? If it does not, it is not the overthrow of the general verdict. It does not find facts to enable the court to say whether such contributory negligence was a fact. This consideration at once denies this finding any force to overthrow the general verdict. This interrogatory was put to get from the jury an expression to sustain the charge of contributory negligence. It does not ask the jury whether such and such facts exist, facts which would in law constitute negligence, as it must. The law is that an interrogatory must put only questions of fact from which a legal proposition may be deduced. What facts arising on the evidence does this interrogatory inquire about? The interrogatory must ask as to facts such as, if answered as desired by the interrogator, will make a verdict for his adversary inconsistent. Any question the answer to which would be inconclusive, and which would not be so inconsistent, should not be put. 20 Ency. Pl. & Prac. 328. "Questions which require the jury merely to answer as to acts or omissions which may or may

not in their opinion be evidence of care or negligence, or from answers to which, either way, the court cannot say, as a matter of law, whether care or negligence is the result, are not material." Clementson on Special Verdicts, 73. This interrogatory, without specifying facts on which to base the opinion, simply asks the jury whether in its opinion Runyan exercised care. Virtually it asks the jury whether in its opinion Runyan was guilty of contributory negligence, a mixed question of law and fact, I may say of law. Such an interrogatory is not good. The failure to ask as to facts on which carelessness, or in other words, contributory negligence, is sought to be predicated is a fatal defect in this interrogatory, and must render its answer abortive. The answer does not find in words that Runyan was guilty of contributory negligence, and could not, since a question calling upon a jury to find on a question of law must not be submitted. 20 Ency. Pl. & Prac. 326; Clementson on Special Verdicts, 117, 217. He is not proven negligent. It does not appear.

But take the question and answer as they are. This finding says that if Runyan had been careful he would not have been injured. Does this come up to the standard of full contributory negligence? No. It does not tell in what he was careless, or to what degree. Runyan having a right to be where he was in work, he could go near or over the wires, unless he knew that there was positive actual danger staring him in the face. If he by accident fell upon or caught his foot in the wires, this would not bar recovery. He might not have used the highest degree of care and yet not be found guilty of contributory negligence defeating the action. We cannot see what was the extent of his knowledge of danger, whether or not he knew of defects in insulation. He was called on to use only ordinary care required of a prudent man under the circumstances; but this finding does not indicate what care or carelessness he used. We cannot from the finding say, or guess, whether he exercised the only care required by law, ordinary, or was chargeable with gross negligence. In the one case he would not be guilty of contributory negligence defeating the action; in the other he would. We cannot say which from the question and answer. The main verdict finds no negligence, and we are asked to say from the special finding that there was; and thus make the special finding inconsistent with the main verdict, when the

special one. does not give facts which, in law, impute contributory negligence.

There is another defective feature of this finding to show its inadequacy to overcome the general verdict. It is in the inconclusive language, "We think not." "Answers expressing only the inclination of the minds of the jury, as to say,' We think not' are insufficient and too uncertain to base a judgment on." *Hopkins* v. *Stacey*, 43 Ind. 554. Eminent authority there cited says, "An opinion is not a legal verdict, and verdicts must be positive, certain and free from all ambiguity." This position may be assailed as technical; but remember that special finding, to overcome general verdicts must be certain and clearly and plainly inconsistent with it. I grant that there are authorities holding otherwise. 20 Ency. Pl. & Prac. 344. I cannot say that I would for this defect alone reject the answer; still it must be said that the answer is indefinite and leaves the mind in doubt whether the jury intended to find a definite fact. Why did it not say "No," if so intended? The law says that answers to interrogatories should be "direct, definite, certain and complete." 20 Ency. Pl. & Prac. 342.

Again this question 10 called upon the jury to say whether if Runyan had been careful he would have been hurt. "Only such questions as can be fairly and intelligently answered should be submitted. Interrogatories requiring the jury to speculate as to what might have happened in a certain contingency should not be submitted." *Atchison &c* v. *Lannigan*, 42 Pac. 343. Therefore, we must regard the answer mere speculation, and not on specific facts, not a flat finding. Findings must be free of obscurity. "They must destroy the general verdict, if at all, only by their own inherent clearness and strength." Clementson on Special Verdicts 135. Thompson on trials, § 2693 says: "The court will not strain the language of the. special findings to override the general verdict. If possible they will be interpreted to support the verdict rather than overturn it. No presumption will be made in their favor; nor will they control the general verdict, unless they are invincibly antagonistic to it."

Another objection to this finding, depriving its answer of force, is, that it assumes a very material fact, that is, that Runyan knew the condition of the wires, their danger &c. This had a tendency to lead the mind of jurors to conclude that

Runyan had such knowledge, that even the judge thought so, else he would not have allowed such an interrogatory. An interrogatory must not ·assume material facts. 20 Ency. Pl. & Prac. 322; *Elliot* v. *Reynolds,* 16 Pac. 698; *Toledo R. Co.* v. *Goddard,* 25 Ind. 185.

A ladder was standing on the bridge floor and resting against the crossbeam on which Runyan was. A special interrogatory was propounded, "Would Runyan have been injured if he had stood on the wooden ladder while painting?" Answer was "No." Evidence goes to show that Runyan did not have or use this ladder, but that it was brought there after he was down burning on the crossbeam. I think the court would have been justified in refusing this interrogatory, because not in the case on evidence. 20 Ency. Pl. & Prac. 331. If so, the answer is out of the case. But the interrogatory was put. Now, it does not appear that Runyan was on the ladder or using it; and I say that if he had been, he was not confined to it, but could lawfully go on the crossbeam in working, if the place where · he was painting or intended to paint, required it. We do not know, no evidence shows, where he was painting. We know nothing about where his work called him. Now, this interrogatory does not ask as to facts from which the jury or court could form an opinion as to safety, and what has been said as to interrogatory 10 applies to this one. It calls for mere opinion regardless of found facts.

Complaint is made of plaintiff's Instruction No. 1. It says that electric companies must use very great care to keep the insulation of its dangerous wires perfect at places where people have right to go for work, and if Runyan, while working, on the bridge, and in a place he had a right to be, came in contact with a wire or wires of the company, and through defect in insulation received a shock from which he died, they must find for the plaintiff unless Runyan was guilty of contributory negligence. It is said that it assumes the wires were dangerous. We surely know that wires conveying electricity are dangerous from our knowledge of things. The courts say they are dangerous unless insulated. It is said it applies the rule of a man's right to go for work at certain places to any work that Runyan might do on this bridge. He had right to go on the bridge where work might call, as we have shown above. It is said

against the instruction that it assumes that Runyan died from a shock, whereas he died from falling on a wire pressing it on a cross beam, causing a short circuit which caused him to be burnt. The instruction does not so assume, but makes it depend· on evidence, there being evidence on both theories.

It is assigned as error that defendant's Instructions Nos. 4, 6 and 7 were refused. Instruction 1 says that if Runyan while working on the bridge and when injured was warned not to touch the wires, and "disregarded the instructions and touched the wires," and thereby a circuit of electricity was formed through his body, which shocked and burned him, then, whether the wires were insulated or not, the jury must find for the defendant. A criticism might be made of this instruction that it imports that Runyan rashly, carelessly and· voluntarily took hold or otherwise touched a wire. No evidence of such contributory negligence. It does not appear how he came in contact with the wire. An interrogatory, 3, asked whether he stepped or ·fell on it or caught hold of it, and was answered, "Fell on the wire." If the language quoted does not mean to convey the idea of wilful negligence by voluntary touching of the wire, then this binding instruction says that merely because he had been warned not to touch the wire, his mere contact with it charged him with contributory negligence. Suppose that while close to the wire in working or passing to a place to work he fell on a wire, or his foot caught in trying to cross over the wires, or in any way by accident he came in contact with the wire. Would this exonerate the defendant for failure to insulate its wires, if the harm came from that? Surely not. Being where he was lawfully engaged in work, using ordinary care, this accident might befall him. Owner of electric wires stringing them over a bridge so near to its top that it is impossible to make repairs on the bridge without coming in contact with them is chargeable with negligence. A workman engaged in repairing a bridge over which electric wires with apparently safe insulation are strung, where he must come in proximity with them in performing his work, has right to assume that contact with them will not be dangerous. *Perham v. Portland Elec. Co.*, 40 L. R. A. 799. "An electric light company is bound to use the very highest degree of care practicable to avoid injury to every one who may be lawfully in proximity

to its wires, and liable to come accidentally or otherwise in contact with them." *Daltry* v. *Media E. L. Co.*, 208 Pa. 403, 57 Atl. 833, 9 Amer. Elec. Cases, 63.   This authority allows Runyan to do work though in proximity to the wires, and leaves room for unfortunate accident; whereas, the instruction does not allow him to go near them, though his work should call for it, and leaves no allowance for accident.   If such be law then our case of *Thomas* v. *Elec. Co.*, 54 W. Va. 395, is not sound. Cases cited in the early part of this opinion show that workmen on roofs, walls and bridges are not held guilty of contributory negligence where there is no gross negligence.   No. 6 is substantially the same as Instruction 1.   It denies Runyan right to go near the wires in his work, and would debar action even for mere accident, though Runyan was using ordinary care.

No. 7 is much the same.   It is binding and leaves no room for accident.   Moreover it says that the occurrence raised no presumption of negligence, for the reason, as I understand, that Runyan had knowledge that the wires were in bad condition.   I do not see how Runyan's knowledge would do away with the presumption of negligence from the occurrence of the accident.   Besides the instruction is not clear in import.   I think also that instructions given the defendant presented its claim fully and fairly on the subject of contributory negligence.

A Witness, Alexander, was asked if he knew whether or not, from the construction of the bridge, in painting any part of the bridge it would be necessary to touch the wires, and the question was not allowed to be answered.   Of course it might not be necessary to touch the wires voluntarily.   The question is not whether it would be necessary to *paint* near the wires, but to *touch* the wires.   It would be necessary to paint the crossbeams near the wires, and in so doing Runyan might accidentally touch them.   And though not necessary to paint near the wires, Runyan had right to pass over the wires walking on the crossbeam in going to paint elsewhere.   If answered as desired it would not be material.   Moreover it is sufficient to say that it does not appear what answer was expected, nor can we say with certainty from the form of the question.

Therefore, we reverse the order setting aside the verdict, and render judgment upon that verdict for the plaintiff.

*Reversed and Rendered.*