(No. 13813.—Judgment reversed.)

RALPH C. AUSTIN, Admr. Defendant in Error, *vs.* THE PUBLIC SERVICE COMPANY OF NORTHERN ILLINOIS, Plaintiff in Error.

*Opinion filed October 22, 1921.*

1. NEGLIGENCE—*when jury may be peremptorily instructed on questions of negligence and contributory negligence.* Negligence and contributory negligence are ordinarily questions of fact for the jury, but when the facts are admitted and all reasonable minds would agree that the defendant was not negligent or that the injury was the result of the plaintiff's own negligence the court may so inform the jury by a peremptory instruction.

2. SAME—*when question of negligence or contributory negligence must be submitted as a question of fact.* Where it remains to be determined by the weighing and consideration of evidence whether either party has performed his legal duty or has observed that degree of care and caution imposed upon him by law, any question of negligence or contributory negligence must be submitted to the jury as a question of fact.

3. SAME—*when court should direct verdict.* It is for the court to say whether there is sufficient evidence before it to present an issue of fact under the pleadings, and if there is not, it is the duty of the court to direct what verdict shall be returned.

4. SAME—*when an electric company has performed its duty in protecting the public.* A company engaged in manufacturing and transmitting electric current need exercise only such care and caution as a person of ordinary prudence might reasonably be expected to exercise under similar circumstances, and if it places its wires in such a position that they will not inflict injury on a person exercising due care for his own safety it has performed its duty.

5. SAME—*extent of duty to insulate electric wires.* A company engaged in manufacturing or distributing electricity must protect the public against danger by properly insulating its wires where the public is likely to come in contact with them; but this duty does not extend to the entire system.

6. SAME—*when it is not material whether electric company had right to place wires in public highway.* While no one has a right to obstruct a public highway except by proper authority, yet in an action against an electric company for a death resulting from contact with its wires along a public highway it is not material by

what authority the defendant placed its wires in the highway, if the declaration does not charge that the defendant was unlawfully encroaching upon the highway.

7. SAME—*what necessary to charge defendant with liability for an injury resulting from electric current.* To charge a person engaged in handling an electric current with liability for an injury resulting from such dangerous agency it is necessary that the injury be one which a person of ordinary prudence, in the light of surrounding circumstances, would reasonably and naturally have anticipated.

8. SAME—*when question of negligence in placing electric wire over highway bridge is for the jury.* In an action against an electric company for the death of a boy who came in contact with a heavily charged wire strung over the top of a highway bridge, whether the company was negligent in the construction and maintenance of the wire over the bridge is a proper question for the jury, where the wire is so located that anyone climbing upon the bridge for any purpose may come in contact with it.

9. SAME—*when boy killed by electric current is guilty of contributory negligence barring recovery for his death.* A boy nearly fourteen years of age, who is killed by coming in contact with a heavily charged electric wire while attempting to walk over the top of a bridge on a beam only fourteen inches wide and thirty-four feet above a rapidly flowing river, for no other purpose than to get a bird's nest, is guilty of such contributory negligence as to bar a recovery against the electric company maintaining and operating the wire; and it is immaterial whether the deceased voluntarily touched the wire or involuntarily seized it in an effort to save himself from falling into the river.

10. SAME—*what is ordinary care.* Ordinary care in a particular case is that degree of care which is exercised by ordinarily prudent persons under the same or similar circumstances.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Will county; the Hon. FRANK L. HOOPER, Judge, presiding.

EDGAR B. ELDER, and BARR & BARR, for plaintiff in error.

SNAPP, HEISE & SNAPP, for defendant in error.

299—8

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Ralph C. Austin, public administrator of Will county, brought this action against the Public Service Company of Northern Illinois to recover damages for the death of Louis Hertel. The declaration charged that the Public Service Company maintained a certain high tension electric wire heavily charged with electricity, upon, over and along a certain public highway in Will county, Illinois, and that it thereupon became the duty of said company to exercise reasonable care and caution and maintain the wire in such condition as not to injure persons in the use of the public highway in the exercise of ordinary care, but said company, regardless of its duty, negligently and carelessly maintained and permitted the wire to be and remain in a dangerous, exposed and unsafe condition, and that Louis Hertel, a boy thirteen years of age, while being upon the public highway in the exercise of ordinary care, then and there came in contact with the wire so negligently and carelessly maintained by said company, and as a result of the negligence and carelessness of said company said Hertel was instantly killed. The case was first tried at the November term, 1918, of the Will county circuit court, and the trial court, at the close of plaintiff's evidence, instructed the jury to find defendant not guilty. Judgment was entered on a verdict returned in accordance with this instruction, and this judgment was reversed by the Appellate Court for the Second District and the cause was remanded, with instructions to submit the issues of fact to a jury. The case was tried again at the January term, 1920. A verdict was returned finding defendant guilty and assessing plaintiff's damages at $5000. The judgment entered upon this verdict was affirmed by the Appellate Court for the Second District, and the case is brought to this court by *certiorari.*

A short distance from the city of Joliet Brandon road crosses the Desplaines river over a bridge known as Brandon

bridge. The village of Rockdale, a manufacturing suburb
of Joliet with a population of about 1300, is located along
the north bank of the Desplaines river, a short distance west
of the north end of this bridge. Brandon bridge is a three-
span beam bridge of simple truss type. The south span is
147 feet long. The floor is laid on the lower chord. The
upper chord is 21 feet 6 inches above the floor. It is sup-
ported at each end by end posts 28 feet long, which stand
at an angle of 57 degrees. The end posts and the upper.
chord are hollow steel beams made by riveting together four
pieces of steel. The face of the end posts and the top of the
upper chord is 14 inches wide and is a smooth plate of steel,
except that there is a row of smooth, rounded rivet heads
along each edge, which stand about half an inch above the
surface. There are five perpendicular struts—latticework
posts—extending from the lower chord to the upper chord
on each side of the south span. The base of the first or
south strut is 36 feet north of the base of the inclined end
post, and its top is 18 feet north of the corner where the top
of the end post is riveted to the south end of the upper
chord. It is 18 feet from the south strut to the next strut
north. Cross-beams extend across the top of the bridge
from one side to the other and are riveted to the upper
chords at the top of each strut. Tie-rods run from the base
of each strut to the top of the next strut. On the west side
of the bridge the defendant company has bolted on the out-
side of the top of the second strut from the south end of
the bridge a post 14 feet long, which extends 8 feet 4 inches
above the top of the upper chord. There is a double cross-
arm on this post which supports four wires,—two on each
side of the post. The distance between the two wires located
on each side of the post is 15 inches and the distance between
the two sets of wires is 22 inches. The first post south of
the bridge is 102 feet 7 inches distant from the post attached
to the bridge. At the point where the post is attached to
the bridge the wires are 8 feet 4 inches above the top of the

bridge. At the point where the top of the south strut joins the upper chord the wires are 7 feet 2 inches above the top of the bridge, and at the top of the south end post the wires are 6 feet 2 inches above the top of the bridge. This shows a sag in the wires of 1 foot 2 inches in the first 18 feet south of the post attached to the bridge and of 2 feet 2 inches in the first 36 feet. The next support for the wires to the north of the post attached to the second strut of the south span is a similar post attached to the second strut of the center span of the bridge, a distance of about 150 feet. It is 36 feet from the post attached to the south span to the south end of the top chord and 72 feet from the post to the north end of the top chord. We have no measurements of the height of the wires above the top of the bridge at points north of this post. Estimating the sag as approximately the same as the sag south of the post, taking into consideration that the stretch north of this post is about 40 feet more than the stretch to the south, the wires would sag to within 4 feet of the top of the bridge at the north end of the top chord of the south span. The inside or east wire was a neutral wire. The second wire from the east,—the one directly over the top chord,—and the two outside wires, were each carrying 4400 volts of electricity. These wires were standard No. 4 copper wire, ordinarily used by power companies for carrying heavy currents. They were insulated with ordinary weatherproof-braid coating. Twelve feet 6 inches below the floor of this bridge the waters of the Desplaines river flowed and the current is rapid. June 11, 1917, Louis Hertel, a boy within ten days of fourteen years of age, crossed the river on this bridge from Rockdale, where he lived, and went with four other boys to a swimming hole some distance from the bridge on the south side of the river. On the way back to Rockdale the boys discovered a bird's nest at the top of the south strut on the west side of the bridge. Deceased and one of his companions, Frank Gollick, stopped and the other three boys walked on across the bridge.

Deceased climbed the end post by holding to the edges with his hands and placing his toes against the rivet heads. When he reached the top of the post he walked on the top chord to the point where the bird's nest rested and tore it out. After this he stood up and walked north along the top of the chord for some distance and then reached up and took hold of the wire directly above the chord with his hands. He was killed instantly. The body dropped into the river below and was found near Morris about ten days later.

The principal contention of defendant is that the trial court erred in denying its motion, at the close of all the evidence, to instruct the jury to find it not guilty. This contention is made on the theory that there was no evidence showing that defendant was negligent in the construction, maintenance and operation of the electric wires in question, and that the evidence showed deceased was not in the exercise of ordinary care for his own safety at the time of the accident which resulted in his death. All controverted questions of fact have been settled by the judgment of the Appellate Court, and we are limited in our review of the case to the determination of the question of law presented by the motion to give to the jury the peremptory instruction. The general rule is that negligence and contributory negligence are questions of fact for the jury, but when the facts are admitted and all reasonable minds agree that the defendant was not negligent in its acts or that the injury was the result of plaintiff's own negligence, the court may, as a matter of law, find that there was no negligence on the part of defendant or that there was such contributory negligence on the part of plaintiff as to defeat a recovery, and so inform the jury by a peremptory instruction. *(Hoehn* v. *Chicago, Peoria and St. Louis Railway Co.* 152 Ill. 223; *Werk* v. *Illinois Steel Co.* 154 id. 427; *Heimann* v. *Kinnare,* 190 id. 156; *Beidler* v. *Branshaw,* 200 id. 425; *Hewes* v. *Chicago and Eastern Illinois Railroad Co.* 217 id. 500.) But so long as the question remains whether either party has

performed his legal duty or has observed that degree of care and caution imposed upon him by law, and the determination of the question involves the weighing and consideration of evidence, the question must be submitted as one of fact. *(Chicago, St. Louis and Pittsburg Railroad Co.* v. *Hutchinson,* 120 Ill. 587.) It is for the court to say whether there is sufficient evidence before it to present an issue of fact under the pleadings, and if there is not, it is the duty of the court to direct what verdict shall be returned. *Block* v. *Swift & Co.* 161 Ill. 107.

Let us first examine the question of defendant's negligence in the construction, maintenance and operation of this electric line. Electricity is a silent, deadly and instantaneous force, and one who uses it for profit is bound to exercise care corresponding to the dangers incident to its use. With the advance of civilization electricity has become a necessity, and in order to make it useful to man it must be carried from place to place. The restrictions governing the handling of this commodity by public or private corporations or by individuals must, in view of its commercial and domestic importance, be reasonable. One engaged in the business of manufacturing, transmitting and distributing electric current is only required to exercise such care and caution as a person of ordinary prudence might reasonably be expected to exercise in the handling of such a silent and dangerous agency under similar circumstances, and if he places his wires in such a position that they will not inflict injury on a person in the exercise of his rights and privileges while he is using due care and caution for his own safety he has fully performed the duty which the law imposes upon him. Practically all wire used in the transmission and distribution of electricity is insulated with a two-ply or three-ply braid weatherproof covering. This is for the purpose of protecting it against atmospheric conditions and is not for the purpose of protecting persons coming in contact with it from shock. These wires can be sufficiently

insulated or protected by the use of proper materials so that all danger from shock is eliminated. Persons handling electricity must protect the public against danger by the proper insulation of its wires where the public in likely to come in contact with them. But this duty does not extend to the entire system. Persons engaged in the transmission of electricity are not insurers of the safety of the public, but they are bound to know the dangers incident to handling electricity and to guard against such dangers by the exercise of care commensurate with them. *(Rowe v. Taylorville Electric Co.* 213 Ill. 318.) Defendant had its wires stretched along and over a public highway and attached by short posts to a steel bridge which was a part of this public highway. The public had a right to travel in any part of this highway, and defendant had no right to obstruct the highway except by authority of some body rightfully representing the public. *(People v. Harris,* 203 Ill. 272.) By what authority defendant placed its wires in the public highway does not appear in this record, but it is not material in the decision of this case, because the declaration does not charge that defendant was unlawfully encroaching upon the public highway. In order to charge a person engaged in the business of handling electric current with liability, it is necessary that the injury which results from such dangerous agency be one which a person of ordinary prudence, in the light of the surrounding circumstances, would reasonably and naturally have anticipated. *(Kempf v. Spokane and Inland Empire Railroad Co.* 82 Wash. 263, 144 Pac. 77; *Wetherby v. Twin State Gas and Electric Co.* 83 Vt. 189, 75 Atl. 8; *O'Gara v. Philadelphia Electric Co.* 244 Pa. 156, 90 Atl. 529.) Deceased was on the top chord of this bridge for pleasure, but the employees of the town that owned this bridge could certainly be expected to be on any part of the bridge for the purpose of painting or repairing it. In view of the fact that this system of wires carrying dangerous loads of electricity was stretched over

and along a public bridge which was a part of the public highway, we are not prepared to hold that reasonable minds may not differ on the question of negligence in the maintenance and operation of the line. Entertaining this view we must hold that the question was properly submitted to the jury, and the finding of the Appellate Court on this controverted issue of fact is binding upon us and we are without authority to review it.

The next question which presents itself for consideration is whether deceased was in the exercise of due care and caution for his own safety at the time of the injury which caused his death. He would have been fourteen years old had he lived until June 21, 1917. He was four and a half feet tall and was normal physically and mentally. After he completed the sixth grade at school he left school and went to work. Before the family came to Rockdale to live they had lived in Chicago, and while the family lived there deceased was employed in the sausage room of Armour & Co. They had lived in Rockdale but a short time before the accident and during that time deceased did some work on a farm. Deceased was old enough to know, and his experience in life was sufficiently broad to convince us that he did know, the danger attending the hazardous act of walking upright on a beam 14 inches wide and 34 feet above a rapidly flowing river, and there is no reason for excusing him from the same degree of care for his own safety which is required of an adult. *Heimann* v. *Kinnare, supra; Walldren Express Co.* v. *Jones,* 163 Ill. 167; *Walldren Express Co.* v. *Krug,* 291 id. 472; *Gleason* v. *Smith,* 180 Mass. 6, 61 N. E. 220; *Zoltovski* v. *Gzella,* 159 Mich. 620, 124 N. W. 527; *Studer* v. *Southern Pacific Co.* 121 Cal. 400, 53 Pac. 942.

Ordinary care has been defined to be that degree of care which is exercised by ordinarily prudent persons under the same or similar circumstances. Whether or not deceased had a legal right to walk erect on the top chord of

this bridge does not determine the question whether he was exercising due care and caution for his own safety. A person has a right to attempt to beat a fast passenger train across a public railroad crosssing, but it has been often and sadly demonstrated that it is not the prudent thing to do. A person would have a legal right to step on the end of a wire which he knew carried a deadly voltage of electric current if he found it in his path on the public sidewalk, but we believe everyone would agree that it would not be the thing an ordinarily prudent person would do. And so we might give a number of examples of acts one has a legal right to do but which in the exercise of due care one ought not to do. Plaintiff relies on *Commonwealth Electric Co.* v. *Melville,* 210 Ill. 70, where this court affirmed a judgment for damages for injuries sustained by a boy coming in contact with an electrically charged wire run underneath a wooden sidewalk in a certain street in Chicago. The sidewalk was built about five feet above the ground. The insulation on this wire became defective and the current set fire to the wooden sidewalk. The boy went under the sidewalk to ascertain if he could find the cause of the fire, and while looking for the fire came in contact with the wire and was burned. He had a right to go under this sidewalk, and in going there he had no reason to anticipate any serious danger. This case is clearly distinguishable from the case at bar. To walk erect on top of an iron beam 14 inches wide, over a rapidly flowing river 34 feet below, is certainly dangerous, and persons exercising common prudence must be held to appreciate the danger. A boy fourteen years old, who has been raised in a city, knows as well as a man that insulated wires carried upon poles are likely to be charged with a deadly load of electricity and that it is not safe to touch them or go where he is likely to fall into them. Whether deceased voluntarily touched these wires or involuntarily seized them in an effort to save himself from falling into

the river can make no difference, because it was his own negligence that placed him in this place of danger. Deceased had no business on top of this bridge, and no person exercising due care would have been there. In view of the record in this case we are forced to the conclusion that deceased was not in the exercise of ordinary care for his own safety, and that the proximate cause of the injury which resulted in his death was his act in voluntarily placing himself in a place of known danger. Such conclusion is so plain and clear that all reasonable men must arrive thereat from a dispassionate consideration of the evidence in this case. The evidence not only failed to show the exercise of ordinary care but showed complete want of care. The trial court erred in refusing to direct a verdict of not guilty.

The judgments of the Appellate Court and of the circuit court of Will county are reversed.

*Judgment reversed.*