HARRISON ELECTRIC COMPANY *v*. BUMGARDNER.

Opinion delivered June 1, 1925.

1.  MASTER AND SERVANT—INJURY IN LINE OF DUTY.—A servant seeking to recover for personal injuries must show that he was injured while in performance of some work in the line of his duty, and, if he were a volunteer undertaking to render a service which the company had no reason to believe he would attempt to perform, the company would not be liable.

2. MASTER AND SERVANT—INJURY IN LINE OF DUTY—JURY QUESTION. —In an action by a lineman's helper for injuries alleged to have been received in the line of his duty, evidence held to make it a jury question whether he was injured in the line of duty.

3. MASTER AND SERVANT—SUFFICIENCY OF WARNING—JURY QUESTION.—In a lineman helper's action for injuries by being burned by an electric wire, whether a warning given that the particular wire was "hot" and dangerous on that account was a sufficient warning held for the jury.

Appeal from Boone Circuit Court; *J. M. Shinn,* Judge; reversed.

*Marvin Hathcoat,* for appellant.

*Shouse & Rowland,* for appellee.

SMITH, J. Appellee, who is a young man now twenty-one years old, sues for an injury which he sustained while only twenty. He was employed by the appellant company, which generated and furnished electric lights for the city of Harrison. He was employed as a lineman's helper, his immediate superior being Lucian Covington, and he testified that it was his duty to read meters, collect bills, to do cut-out work, and to assist the lineman.

On the day when appellee was injured he and Covington had been engaged in collecting bills for the appellant company, and they reported to the appellant's office about 4 p. m., and were there informed that there was a trouble call. The office girl, who was also the bookkeeper, and whose duty it was to receive these calls and to make a ticket thereof, which was placed on a file, was not sure of the location from which the call had come but thought it was from the Wallace store on the south side of the square. Covington went to see what the trouble was, but soon returned and said that he had found no one reporting trouble. Appellee said he would go to the store of another man, named Wallace, on another side of the square, and see if the trouble was there. Covington testified that he directed appellee to ascertain what the trouble was and to report back to him.

Appellee went to the store of the other Wallace, and found there a man named Keeton, and another man whose name was Bogart, and was told that they had called him. Keeton and Bogart were the linemen of the telephone company, whose wires were stretched on the same poles with the appellant light company's wires. Keeton told appellee there was a "hot" wire which he wished removed from the pole. There were five cross-arms on the pole, and the top cross-arm was used by the light company, the wires of the telephone company being fastened to the lower cross-arms.

Appellee admits that Keeton told him the wire was a live one—indeed, that was the reason Keeton wished it removed—but appellee testified that he thought Keeton was mistaken, and he said he would climb the pole and find out whether the wire was "hot," as the witnesses expressed it, or not. He had with him some pliers, the handles of which were insulated, and appellee testified that he intended to test out the wire in question with the pliers, and he climbed the pole for that purpose, and as he reached out with the pliers, but before touching the wire, he was badly burned. Appellee was standing on the cable of the telephone company when he was burned and was unable to extricate himself until Keeton telephoned the light company to shut off the current, and in the meantime he was badly burned.

Appellee complains that the appellant light company was negligent in the following particulars: (1) Failure to promulgate reasonable rules for the safety of its employees; (2) failure to warn appellee, an inexperienced youth, of the dangers incident to his employment and how best to avoid them; (3) failure to disconnect the high-current wires where a transformer had been removed and to maintain effectual insulation. There was a verdict and judgment for appellee, which is not claimed to be excessive if there is liability, and the company has appealed.

The instructions given cover many phases of the law of master and servant, beginning with the duty to promulgate rules to protect the servant. These we shall not review, as we think they submitted a number of questions which are not properly presented by the testimony, and we shall discuss only the law applicable to those issues which we think should be submitted to the jury.

It may be first said that it is insisted on the part of appellant that appellee was not engaged in the line of his duty at the time of his injury. That no one connected with the appellant company knew what appellee proposed to do, and that it was no part of appellee's duty to work with the wires except as a helper to Covington, who should have been notified by appellee. Covington who was appellee's immediate superior, testified that he directed appellee to ascertain the trouble and report to him.

It is, of course, essential to a recovery by appellee that he show that he was injured while in the performance of some work in the line of his duty, and if he were a mere volunteer, undertaking to render a service which the company had no reason to believe he would attempt to perform, the company would not be liable. But appellee testified that he was injured while engaged in the line of his duty, and this, of course, made a question for the jury.

Appellee was a high school graduate, and while in navy had graduated from the naval electrical school, but he testified that his training gave him no experience in handling wires, and that he did not know the dangerous character of the wire he attempted to remove, or, rather, was attempting to test for that purpose. He admitted that he knew that the wires conveying the high voltage were on the top cross-arm of the telephone pole, but he had not been given any instructions as to the manner of protecting himself against the current which they carried, and he supposed the insulation on his pliers would protect him from danger when he made the test to determine the character of the wire which the telephone lineman requested him to remove.

Appellee also testified that the light wire was not properly insulated; but we do not think this was the proximate cause of the injury, and we do not understand that the testimony shows any duty on the part of the light company to insulate the wires at the point where appellee was injured.

In the recent case of *Hines* v. *Consumers' Ice & Light Co., ante* p. 914 we had occasion to consider the duty to insulate, and we defined that duty by quoting and approving the following statement of the law from 9 R. C. L., at § 21 of the chapter on Electricity, page 1213, as follows: "Section 21. *Insulation at Particular Points or Places.* It is only reasonable that the duty of providing insulation should be limited to those points or places where there is reason to apprehend that persons may come in contact with the wires, and the law does not compel electric companies to insulate their wires everywhere, but only at places where people may go for work, business, or pleasure, that is, where they may reasonably be expected to go."

Here the light wires were placed on a cross-arm above the telephone wires, and the testimony does not show that the appellant light company was required to anticipate that any employee would come in contact with the wire where appellee was injured without being prepared to handle this wire with safety to himself. The method employed for this purpose was the use of rubber gloves, and the testimony shows that appellant had gloves for that purpose. Appellee admitted that he knew that gloves would be furnished for the purpose of removing that light wire, and that it was his intention to get the gloves before attempting to remove the wire, but he also testified that he was first endeavoring to determine whether the wire was a live one or not, and that he did not know that the use of a pair of insulated pliers to determine that fact would involve any danger to himself.

It is insisted that the admission of appellee that the telephone lineman had told appellee that the wire was

"hot" and dangerous on that account, and that this was the reason why he wished it removed, was all the warning required or which any one could have given; but we are unwilling to say, as a matter of law, that this is true, because, as we have said, appellee testified that he was not attempting to remove the wire, but was only endeavoring to verify the statement of the telephone lineman before going after the gloves or reporting the trouble to Covington.

It must be said that this case is a close one whether appellee is entitled to have any issue in the case submitted to the jury, in view of his own admissions. But, on account of his age, his own testimony that he had only worked as an assistant lineman for three days in removing and repairing wires, although he had been employed by appellant company for a month in other work, and his testimony that he was ignorant of the dangers of his employment, and had been given no instructions or warning in that respect, we have concluded that the case should go to the jury on these questions, but we think no other theory of liability is presented.

For the errors in submitting other questions of negligence to the jury, the judgment is reversed, and the cause will be remanded for a new trial.