## PAUL BUNTEN v. EASTERN MINNESOTA POWER COMPANY.[1]

No. 27,414.

December 13, 1929.

[1]Reported in 228 N. W. 332.

Baldwin, Baldwin, Holmes & Mayall, for appellant.

Samuel A. Anderson, John D. Greathouse and S. B. Wennerberg, for respondent.

TAYLOR, C.

Trunk highway No. 1 and the Northern Pacific railroad pass in a north and south direction through Rock Creek, a village in Pine county having a population of about 200. A spur track on which cars are loaded and unloaded extends about 1,000 feet in a southwesterly direction from the main track of the railroad. Defendant's power line, constructed in 1909 and supported by wooden poles, passes over this spur track. The power line consists of three wires placed in a triangular position, one being attached to the top of the poles and one to each end of short cross-arms supported by the poles. The distance between these wires is given as about 2½ feet. They were not insulated and carried 13,200 volts of electricity.

In 1927 the Western Asphalt Paving Corporation paved the section of the truck highway passing through Rock Creek, and in doing the work used a large, heavy concrete mixer which moved by its own power on caterpillar trucks. At the front end of this mixer a stationary steel boom nearly square and about 12 inches wide extended at an angle of about 45 degrees to a height of 20 feet 8¼ inches above the surface on which the mixer rested. Wire cables, used in operating the machine passed over pulleys at the upper

end of this boom. The paving company, having completed its work, loaded the mixer on a flat car in the forenoon of July 5, 1927, for shipment over the railroad. It was loaded before the boom was removed. On account of bridges and other obstructions railroads require that nothing received for shipment shall project to a greater height than about 12 feet above the floor of the car. To prepare the mixer for shipment it was necessary to remove this stationary boom. The mixer was placed on the flat car while the car stood on the spur track at some distance from the point where defendant's power line passed over it. Immediately thereafter the paving company moved the car to a point which brought the top of the boom directly beneath the power line and between and a few inches below the two lower wires.

Plaintiff was an employe of the paving company and worked on or about the mixer. In the afternoon of July 5, plaintiff and other employes started to remove the boom. Plaintiff detached one end of the wire cables and pulled them over the pulleys to the floor of the car. The end of the last cable jammed in the pulley at the top of the boom. Plaintiff climbed up the boom for the purpose of releasing it and grasped the cable and pulled. As he did so he received an electric shock which burned him badly and caused severe permanent injuries. He could have proceeded against his employer for compensation under the workmen's compensation law; but if his injuries resulted proximately from the negligence of defendant he had the right to proceed against defendant. He brought this action against defendant and recovered a verdict for $23,000. Defendant made an alternative motion for judgment non obstante or for a new trial, and appealed from an order denying it.

Plaintiff bases his action on the claim that defendant was negligent in not placing its wires at a greater height and in not insulating that portion of them which passed over the spur track.

The material facts are not in dispute. The only buildings in the vicinity of the spur track were a creamery and two warehouses. The power line had been maintained in substantially the same position since 1909. The lower wires were 25½ feet above the top of the rail according to measurements by both parties. The top of the

boom as the mixer stood on the flat car was 24 feet 8¼ inches above the top of the rail. It at no time came in contact with the wires although moved along the track under them.

In view of the undisputed facts, estimates of the extent to which the wires sagged, made at the trial a year later and based wholly upon what the witnesses remembered as to the appearance of the wires at about the time of the accident, were without probative force. The wires were high enough not to endanger trainmen on the top of freight cars. There is nothing to indicate that anything of a sufficient height to come in contact with them had been moved over the spur track or the public highways during the 18 years they had been maintained. So far as appears, plaintiff is the only person who ever placed himself in a position to be injured by them. Defendant presented testimony to the effect that such transmission lines in this state are practically all of uninsulated wires and that engineers almost unanimously favor the use of bare wires.

Defendant contends that the wires were at a sufficient height to avoid injury to any person doing anything which defendant could reasonably be expected to anticipate as likely to be done in the vicinity of the wires; and that unnecessarily placing the end of a steel boom within a few inches of these wires and proceeding to work upon that end of it was an act so unusual and so unlikely to happen that defendant cannot be held guilty of negligence in failing to foresee and guard against such an occurrence.

Those engaged in transmitting such a dangerous force as electricity, which gives no warning of its presence and is not apparent to the senses, are required to exercise a degree of care in constructing and maintaining the wires over which it is transmitted commensurate with the danger to be apprehended from contact with such wires or the escape of electricity therefrom; but they are not insurers against accidents or injuries. Gilbert v. Duluth G. E. Co. 93 Minn. 99, 100 N. W. 653, 106 A. S. R. 430; Musolf v. Duluth Edison E. Co. 108 Minn. 369, 122 N. W. 499, 24 L.R.A. (N.S.) 451; Hoppe v. City of Winona, 113 Minn. 252, 129 N. W. 577, 33 L.R.A. (N.S.) 449, Ann. Cas. 1912A, 247; Drimel v. Union Power Co.

139 Minn. 122, 165 N. W. 1058; Davidson v. Otter Tail Power Co. 150 Minn. 446, 185 N. W. 644; Pattock v. St. Cloud P. S. Co. 152 Minn. 69, 187 N. W. 969.

The cases are numerous in which the courts have been called upon to determine whether a company maintaining a high tension wire ought to have anticipated and guarded against a particular danger. It has been held negligent to string unprotected or insufficiently protected high tension wires over the top or along the side of a bridge so near the framework that workmen repairing or painting the framework might come in contact with them, as it ought to have been anticipated that workmen might go upon the framework for such purposes. Hoppe v. City of Winona, 113 Minn. 252, 129 N. W. 577, 33 L.R.A.(N.S.) 449, Ann. Cas. 1912A, 247; Austin v. Public Service Co. 299 Ill. 112, 132 N. E. 458, 17 A. L. R. 795.

It has also been held negligent to permit such wires to pass through the branches of trees, especially where the trees are near streets or near grounds upon which children play, as it ought to have been anticipated that the trees might be climbed. Dwight Mfg. Co. v. Word, 200 Ala. 221, 75 So. 979; Temple v. McComb City E. L. & P. Co. 89 Miss. 1, 42 So. 874, 11 L.R.A.(N.S.) 449, 119 A. S. R. 698, 10 Ann. Cas. 924; McCrea v. Beverly G. & E. Co. 216 Mass. 495, 104 N. E. 365; Philbin v. Marlborough Elec. Co. 218 Mass. 394, 105 N. E. 893.

It has also been held negligent to fail to maintain such wires at a sufficient height above a highway to permit the unobstructed passage of structures of a height frequently moved along the highway. Shank v. Great Shoshone & T. F. W. P. Co. (C. C. A.) 205 F. 833; Greenwood v. Eastern Oregon Power Co. 67 Or. 433, 136 P. 336; Logan v. Empire District Elec. Co. 99 Kan. 381, 161 P. 659, L. R. A. 1917E, 258.

But where an electric company maintains its wires at a height at which they would not come in dangerous proximity to such persons or things as it reasonably ought to anticipate might rightfully come under or near them, it is not chargeable with negligence because someone doing an act which it had no reason to expect

suffers an injury which might not have been sustained if the wires had been higher. Fairbairn v. American River Elec. Co. 170 Cal. 115, 148 P. 788; Mayhew v. Yakima Power Co. 72 Wash. 431, 130 P. 485; Mirnek v. West Penn Power Co. 279 Pa. 188, 123 A. 769; Kentucky Utilities Co. v. Searcy, 167 Ky. 840, 181 S. W. 662; Brush E. L. & P. Co. v. Lefevre, 93 Tex. 604, 57 S. W. 640, 49 L. R. A. 771, 77 A. S. R. 898; Braun v. Buffalo G. E. Co. 200 N. Y. 484, 94 N. E. 206, 31 L.R.A.(N.S.) 1089, 140 A. S. R. 645, 21 Ann. Cas. 370.

It is the duty of an electric company which maintains high voltage wires at places where people have the right to be and are likely to come in contact with them to guard against danger from the wires by effectively insulating them or by providing other sufficient safeguards. Austin v. Public Service Co. 299 Ill. 112, 132 N. E. 458, 17 A. L. R. 795; Yeager v. Edison Elec. Co. 242 Pa. 101, 88 A. 872; Rowe v. Taylorville Elec. Co. 213 Ill. 318, 72 N. E. 711; Knowlton v. Des Moines Edison L. Co. 117 Iowa, 451, 90 N. W. 818; Griffin v. United E. L. Co. 164 Mass. 492, 41 N. E. 675, 32 L. R. A. 400, 49 A. S. R. 477; Musolf v. Duluth Edison E. Co. 108 Minn. 369, 122 N. W. 499, 24 L.R.A.(N.S.) 451; Davidson v. Otter Tail Power Co. 150 Minn. 446, 185 N. W. 644; Thornton Bros. Co. v. Northern States Power Co. 151 Minn. 435, 186 N. W. 863, 187 N. W. 610; Pattock v. St. Cloud P. S. Co. 152 Minn. 69, 187 N. W. 969.

But it is required to provide such insulation or other safeguards only at those places where in the exercise of reasonable prudence and foresight it ought to anticipate that injury might result to some one in the absence of such protection. In 9 R. C. L. 1213, § 21, it is said:

"It is only reasonable that the duty of providing insulation should be limited to those points or places where there is reason to apprehend that persons may come in contact with the wires, and the law does not compel electric companies to insulate their wires everywhere, but only at places where people may go for work, business, or pleasure, that is, where they may reasonably be expected to go."

The cases are to the same effect. Wetherby's Admr. v. Twin State Gas Co. 83 Vt. 189, 75 A. 8, 25 L.R.A.(N.S.) 1220, 21 Ann. Cas. 1092; Hines v. Consumers I. & L. Co. 168 Ark. 914, 272 S. W. 59; Harrison Elec. Co. v. Bumgardner, 168 Ark. 1074, 272 S. W. 688; Austin v. Public Service Co. 299 Ill. 112, 132 N. E. 458, 17 A. L. R. 795; Rowe v. Taylorville Elec. Co. 213 Ill. 318, 72 N. E. 711; Hector v. Boston E. L. Co. 161 Mass. 558, 37 N. E. 773, 25 L. R. A. 554; Brush E. L. & P. Co. v. Lefevre, 93 Tex. 604, 57 S. W. 640, 49 L. R. A. 771, 77 A. S. R. 898; Graves v. Washington W. P. Co. 44 Wash. 675, 87 P. 956, 11 L.R.A.(N.S.) 452; Knowlton v. Des Moines Edison L. Co. 117 Iowa, 451, 90 N. W. 818; Runyan v. Kanawha W. & L. Co. 68 W. Va. 609, 71 S. E. 259, 35 L.R.A.(N.S.) 430.

In Kieffer v. Wisconsin Ry. L. & P. Co. 137 Minn. 112, 162 N. W. 1065, 1066, a transmission line carrying a heavy voltage was supported at one point by an arm extending from the top of the corner of an old unused building belonging to defendant. Kieffer was engaged in removing some old machinery claimed by his employer from the lower part of the building and wanted some wire for use in his work. He saw a coil of wire on the roof of the building and climbed up there to get it. In straightening out the wire and throwing it down he caused it to come in contact with the transmission line and was injured. The court said [137 Minn. 114]:

"Defendant could not anticipate that anyone would climb to the top and come in contact with the wires any more than if they had been fastened to poles in the usual way."

And further said, among other things [137 Minn. 114]:

"Of course it is true, conceding that there was a duty to further insulate the wires at this point, and if defendant ought to have anticipated that an injury might occur from the lack of proper insulation or the failure to warn, that it is immaterial that it could not anticipate the particular accident that happened. The trouble is that defendant could not reasonably anticipate any accident at that point. It is plainly a case of no liability."

In Thornton Bros. Co. v. Northern States Power Co. 151 Minn. 435, 186 N. W. 863, 864, 187 N. W. 610, plaintiff was engaged in

laying water pipes in South St. Paul, and in filling the trenches used a machine which had a rigid boom extending 17 feet above the ground. The defendant maintained a power line across the street. The wires were 20 feet above the ground at the place where they were attached to the poles but sagged to such an extent that the boom could not pass under them. They had been insulated, but the insulation had become worn and defective. An employe of plaintiff climbed the boom and in attempting to lift the wire over it was injured. Defendant contended that it had performed its duty when it suspended the wires 20 feet above the ground. The court said [151 Minn. 438]:

"At that height they would not interfere with vehicles passing along the street, and it is probably true that negligence could not be imputed to defendant on the sole ground that its wires were strung too low;"

but sustained the verdict for plaintiff on the ground:

"that the evidence would not compel a finding that defendant was under no duty to insulate these wires."

G. S. 1923 (1 Mason, 1927) § 2616, provides that any person moving any building or structure upon a public highway shall so move it as not unnecessarily to interfere with or damage telephone or electric power wires; and that whenever necessary to displace or remove such wires to permit the passage of such building or structure the owner of the wires shall not be required to displace or remove them until tendered the cost thereof; but further provides that this section shall not apply "to the moving of any building or structure 18 feet in height or less within the limits of any incorporated city." While this statute does not apply to the present case, it tends to indicate the legislative policy in respect to the maintenance of such wires.

L. 1925, p. 139, c. 152, 1 Mason, 1927, §§ 4718-1 and 4718-2, authorizes the railroad and warehouse commission to prescribe regulations for the construction and maintenance of electric wires. Plaintiff offered in evidence certain regulations adopted by the commis-

sion, but they were excluded on the ground that they did not apply to the wires here in question. As these regulations are neither in evidence nor in the record and plaintiff has not appealed, the ruling cannot be questioned here.

We reach the conclusion that defendant was not required to insulate its wires where they passed over the spur track, and that the facts will not justify a finding that defendant was negligent in failing to string and maintain them at a greater height. The order is reversed and judgment directed, for defendant.

HOLT, J. (dissenting).

Since the defendant chose to cross the railway right of way where a spur track was maintained for loading and unloading cars, it seems to me it was a question for the jury whether it should have anticipated, in these days when road-building machines of so large a type are being transported that they need to be dismantled after being placed on the cars, that the men engaged in dismantling might be exposed to deadly peril from the proximity of the uninsulated wires displaying no warning of their character.

UPON APPLICATION FOR REARGUMENT.

On January 17, 1930, the following opinion was filed:

PER CURIAM.

In an application for reargument plaintiff insists that, as the rules and regulations adopted by the railroad and warehouse commission were adopted pursuant to statutory authority, therefore it is the duty of the court to take judicial notice of them. Although it does not appear that this claim was made in the court below, plaintiff's contention is doubtless correct. 23 C. J. 99. We have examined these rules and regulations and concur in the view of the learned trial court that they do not apply here for the reason that they provide that "the rebuilding or replacement of existing construction will not be required unless in specific cases it can be shown that the existing construction is of such a nature as to create a hazard or cause interference with service."

Reargument denied.