12889

WEEKS v. CAROLINA POWER & LIGHT CO. *ET AL.*

(153 S. E., 119)

*Messrs. Lee & Moise* and *Dargan & Paulling,* for appellant,

*Messrs. Epps & Levy* and *Cuttino & Cuttino,* for respondent,

April 11, 1930.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

This action on tort was brought on behalf of Robert S. Weeks, seventeen years of age, against Carolina Power & Light Company, a corporation, and M. A. Doughty, local manager at Sumter of the power company. The trial in the Court of Common Pleas for Sumter County, before his Honor, Circuit Judge Ramage, and a jury, resulted in a verdict and judgment in favor of the plaintiff against Carolina Power & Light Company alone, for the sum of $3,500 actual damages, and $5,000 punitive damages.

The defendant the power company has appealed from the verdict and judgment against it on seven exceptions, but, as only four questions are raised, some of the exceptions may be grouped in our disposition of them.

We take up first the third exception, which imputes error to the trial Judge because he charged the jury to the effect that they might render a verdict against the power company alone, and in favor of the defendant Doughty, or against Doughty alone, and in favor of the power company. The appellant insists there was no allegation in the complaint of separate and independent acts of negligence on the part of the two defendants, but that, on the contrary, the complaint alleged that the negligence charged against the two defendants was the negligence of Doughty, the agent of the power company, and that the power company could not be held liable if Doughty was not first liable.

It is our opinion that the appellant is mistaken as to the allegations of the complaint. In Paragraph V of that pleading, negligence was alleged against both the defendants as to the manner of stringing certain wires carrying electric current. The plaintiff charged that these wires were strung

"under the actual supervision and direction of the defendant M. A. Doughty, *and with the help of a number of other servants of the defendant company;* \* \* \* and *the defendants thereafter maintained said wires in this dangerous position.*" In Paragraph VI, it was alleged: "Although the defendants knew that said wires would be charged with electricity for the creation of light and power, and would be highly dangerous to any one coming in contact with them, etc., \* \* \* still notwithstanding all this, *they used for said construction uninsulated wires and used absolutely no protection against injury to persons using said verandas, and gave no warning of said danger.*" Referring to previous injuries, alleged to have occurred because of the negligent placing and maintaining of the wires, which caused plaintiff's alleged injuries, it was stated in Paragraph VII of the complaint: *"That these facts had been reported to the defendants, but they had done nothing to prevent their recurrence and had provided no warning or protection against injury to the public."* In Paragraph XI, the plaintiff charged: "That all of *said acts and omissions on the part of the defendants and the agents and servants of the defendant company,* were negligent, willful, wanton and grossly negligent, and *they caused and contributed* to the injury aforesaid of Robert S. Weeks, *both jointly and concurrently."*

There was some evidence in the case, adduced by the defendants from the testimony of the defendant Doughty, tending to show that the negligent construction and maintenance of the electric wires, with which the plaintiff came in contact, and as a result of which contact he suffered his injuries, were due to *the acts of Mr. Bullard, a construction engineer of the power company, who, in construction work, was higher than Doughty; and that Doughty received instructions from the company that Bullard was coming to make the changes in the wires, and that Bullard could not have done this without the authority of "people higher up."* There was evidence also going to establish the fact that if the wires had remained where Doughty had caused them to

be placed, plaintiff's injuries would not have been sustained; *and these injuries were entirely due to wires being placed where Bullard, the construction engineer, had directed them to be placed.*

Undoubtedly, as the appellant contends, the law is . that where a master and his servant are sued together for the same act of negligence or willful tort, and the master's liability rests *solely* on the servant's conduct, a verdict against *the master alone* is illogical and cannot stand. *Johnson v. A. C. L. Railroad Co.,* 142 S. C., 125, 140 S. E., 443, and cases there cited.

Under the stated principle of the *Johnson case,* if the proof in this case had shown that the plaintiff's injuries were due solely to an act of negligence or willful tort of Doughty, the agent of the power company, the jury could not have rendered a verdict against the power company alone.

But this case is not controlled alone by the rule of law to which we have referred, for some reasons already pointed out. And another principle, well recognized by this Court, is involved. *If a delict be charged against both the master and the servant, or against the master and the servant and other agents of the master, and it is shown by the evidence that the delict was committed by the master through some other servant than the servant sued with the master, a verdict against the master alone may be rendered.* *Rhodes v. Southern Railway Co. et al.,* 139 S. C., 139, 137 S. E., 434, and cases there cited.

After the jury had been considering the case for some time, they came into Court and asked, in case they found a verdict against the defendants, could the defendants be separated. The foreman inquired: "In other words, can a verdict be found against one exclusive of the other?" The trial Judge, in reply to that inquiry, instructed the jury as follows: "All I can tell you, gentlemen, is that you go and find such verdict against one or more of the defendants, or none of them, as you see fit from the testimony. In other words, it is a matter for you entirely."

By its exceptions 1 and 2, the appellant contends that the charge was erroneous, as that was a matter of law to be decided by the Court, and not one for the determination of the jury, except under instructions from the Court as to what the law was. And the appellant raises in its second exception practically the same question referred to in its third exception, already disposed of.

What we have said as to the third exception covers almost sufficiently the matters raised in these two exceptions.

If there had been no allegation in the complaint, or no evidence in the case, justifying a verdict against one of the defendants alone, it would have been a matter of law, as argued by the appellant, for the Court to declare that the jury could not render a verdict against the power company, unless a verdict against its agent, Doughty, was also returned. But when the pleadings and the evidence both warranted a finding against both defendants, or against only one of the defendants, then the Judge was absolutely correct in submitting the verdict to be returned to the wisdom of the jury, under the law as he had declared it and the evidence adduced in the case. The authorities already cited sustain this holding.

The fourth exception charges error because the trial Judge refused to instruct the jury that no punitive damages could be recovered, as there was no evidence of willfulness on the part of the defendants. Exception 5 complains of error in refusing to direct a verdict as to punitive damages in favor of both defendants. The sixth exception is based on the refusal of the trial Judge to grant a new trial, on the ground that there was no proof of willfulness or wantonness on the appellant. These exceptions may be considered, as they were argued, at one time. They require a brief review of the evidence in the case, which supported the allegations of the complaint. The evidence, of course, so far as we are concerned, must be looked upon in the light most favorable to the plaintiff.

"Pocalla," operated by M. H. Beck, is a famous and attractive resort, near the City of Sumter, to which are attracted thousands of persons, old and young, men, women and children. There are camping grounds, picnic grounds, a large swimming pool, and a dance hall. The public generally is invited and attracted. The principal building at the resort consists of a store building downstairs, with a dance hall upstairs. On either side of the dance hall is a veranda, extending the length of the dance hall, and on a line with the front of the building, and these verandas are commonly used by the public who come for amusement and sight-seeing. The appellant power company furnished electric light and power to Pocalla, and Mr. Doughty, a defendant, is its local manager at Sumter. Originally, the necessary wires were placed below the floor of the veranda, where no one could reach them without getting over the railing of the veranda and reaching around the end of the floor. Mr. Doughty thought that a perfectly safe place for the location of the wires, and, so far as the evidence disclosed, his judgment was correct. The wires at that time were not insulated, and, perhaps, it was not necessary for them so to be. About three months after the placing by Mr. Doughty, Bullard, a construction engineer of the appellant, inspected the wires; determined that they had not been put up properly; got authority to move them. He had them moved to the place where they were at the time of plaintiff's injuries. Bullard caused them to be placed about 19½ inches out from the end of the veranda and at a height of around 5 feet 3½ inches from the floor of the veranda. The wires were not insulated, and the apellant took no means of properly guarding them. It was suggested to Mr. Beck, the proprietor of Pocalla, that he put up a guard at the end of the veranda. Mr. Beck did put up some small wire netting and fastened the same with some small poultry wire staples. This netting had been broken down several times before plaintiff's accident, and was crushed down level with the railing at the end of the veranda

at the time of the accident. The railing was 37½ inches from the floor. Mr. Doughty, it seems, approved the new location of the wires on the part of Bullard. Before appellant got charge of the power company at Sumter, and in that territory, some of the towns thereabout, including Sumter, used, generally, insulated wires. After the appellant took charge of the Sumter plant, insulated wires were not used so generally. No steps were taken by the appellant to give any notice or warning to the public that the custom of using insulated wires had been very generally changed. At some time prior to plaintiff's accident, according to the plaintiff about six days, and according to the appellant about two days, previously, a young lady had been injured to some extent by coming in contact with the same wires at Pocalla which caused plaintiff's injuries. Mr. Beck had reported this occurrence to the appellant very soon after it happened, at least two days prior to the accident to plaintiff, and suggested that it would be easier to remedy the situation than to have a law suit. No change in the condition of the wires was made, and nothing was done to prevent another accident. On the day of the accident to plaintiff, he, with a number of people, went to Pocalla on a camping trip, to swim, dance, and have a good time generally. He was not informed of the danger of the electric wires of the appellant. With one of his young friends, they went to the veranda and sat on the railing. In some unaccountable way, not explained, and perhaps impossible to explain, as accidents of this kind often are, the plaintiff's right hand came in contact with the highly charged wires, and his fingers by the effect of the current tightly closed about one of the wires. As a result of the injury received, plaintiff was shocked, he had to be treated by three physicians, the index finger of his right hand had to be amputated, and he suffered other injuries to his hand. Plaintiff was a student at the South Carolina Military Academy, engaged actively in the playing of football and other sports, and he had the reputation of being a good shortstop. His

injuries have interfered with his activities in many ways and have already prevented him from continuing the playing of baseball and engaging in some other sports. He is permanently injured.

The appellant claimed, and tried to show, that the plaintiff negligently took hold of the wires, and this negligence brought about the injuries he sustained. Appellant had some proof to support this claim, but, as indicated already, these questions of fact were entirely for the jury.

Electricity is a very dangerous thing. Some one has appropriately referred to it as "chained lightning." That lightning will break the little chains which are supposed to hold it. Power companies and their employees, even more than all other people, ought to know the great danger of electricity. They ought to take care to see that their wires, which convey electric current, are properly guarded, so as to prevent injuries to persons and property. This duty is incumbent upon them under the law of this state.

"One establishing a dangerous agency at a place where others are liable to be and have the right to be, must use due care in guarding it." (Syllabus) *Hayes v. Southern Power Co.*, 95 S. C., 230, 78 S. E., 956.

"The failure of an electric company to keep its wires insulated, so that a wire strung above them and falling across them becomes charged and causes the death of a pedestrian coming in contact with it, is a breach of duty to the public, without respect to its actual knowledge of the fallen wire or its diligence in discovering it." (Syllabus) *Parsons v. Charleston Consolidated Ry., Gas & Electric Co.*, 69 S. C., 305, 48 S. E., 284, 104 Am. St. Rep., 800.

"Those operating electric wires in streets are required to exercise a very high degree of care in their construction, repair, inspection and maintenance to prevent injury to others." (Syllabus) *Lundy v. Southern Bell Telephone & Telegraph Co.*, 90 S. C., 25, 72 S. E., 558.

"An electric company is bound to use due diligence to receive information as to the condition of its wires, and failure to use due diligence in this respect would constitute negligence." (Syllabus) *Mitchell v. Light & Power Co.,* 45 S. C., 146, 22 S. E., 767, 31 L. R. A., 577.

In the article on "Electricity," Corpus Juris says this: "The exercise of a sufficient degree of care requires a careful and proper insulation of all wires and appliances in places where there is a likelihood or reasonable probability of human contact therewith, and the exercise of due care to make and keep insulation perfect at places where people have a right to go on business or pleasure." 20 C. J., 355.

The case at bar is easily distinguishable from that of *Williams v. City of Sumter,* 149 S. C., 375, 147 S. E., 321. The facts of the *Williams case,* briefly stated, were these: The City of Sumter had inserted proper insulator on a guy wire at a point more than nine feet from the ground. Plaintiff, a little child, climbed up the guy wire, passed the insulator, and received an electrical shock, which seriously injured him. We held the city not liable, on the ground that it could not reasonably anticipate that even a child, playing in the street, would attempt to climb the wire to a point above the insulator, so as to put himself in a position of the resultant peril.

The facts of the *Williams case* are so much different from those of this case that the cited case has no bearing here. In this case, the uninsulated and highly dangerous wire was within 19½ inches of where people congregated for play, sport, and amusement. Even a small child's arm can easily reach for a distance of 19½ inches. One moving his arms about in play or exercise, or from force of habit, could have easily and unconsciously come in contact with the unguarded wire. It was not necessary for one to climb 9 feet, or even any distance, to put himself into a position of peril. The appellant should have anticipated the grave probability of

danger in having an unguarded wire so close within the reach of so many people.

In the Court below, the appellant made no motion for non-suit or for a directed verdict on the ground of lack of evidence to show negligence on the part of the defendants, or either of them, or on the ground that the evidence conclusively showed contributory negligence on the part of the respondent. Not one of the exceptions touched in the least way any of these matters. In fact, no exception as to error on the part of the Circuit Judge in submitting the case to the jury as to actual damages could be considered by us, since no such question was raised before him. It is needless to refer to authorities to sustain this position. Numerous cases cited in the Southeastern Digest, under the title "Appeal and Error," unnecessary to be referred to here, support it. The forceful argument in the dissenting opinion, seeking to show that there was no negligence on the part of the appellant, is quite interesting. But, however strong it sounds, it can have no effect, *since the appellant has itself conceded that there was enough evidence to require the trial Judge to submit the question of negligence to the jury.*

The evidence was entirely sufficient, in our opinion, to require the presiding Judge to submit the case to the jury as to punitive damages. When the appellant had notice before, if for only two days, that a young lady had been injured by coming in contact with the same wires where the plaintiff received his injuries, it was appellant's duty to proceed, just as early as it possibly could, to correct the condition there existing. Appellant knew that many people, including little children, would be at Pocalla because of its popularity and attractiveness. It knew that the young boys and girls who went there to dance, swim, engage in sports, and to play were not on serious business, but were out for a good time, and that they would run, romp, jump, and climb anywhere. The condition of the wires was an emergency which should have been cared for, even if the appel-

lant had to work on Sunday, and our laws allow work of that kind on the Sabbath day.

This Court has held that conduct constituting a reckless disregard of the rights of others may justify an award of punitive damages. *Bailey v. Smith,* 132 S. C., 212, 128 S. E., 423.

"A conscious failure to observe due care has been repeatedly held by this Court to warrant a jury in giving not only actual damages, but punitive damages as well. When one, without thinking, just carelessly does an act which results in an injury to another, then ordinary negligence is established. On the other hand, when a person with the thought that his negligent act may produce an injury to another proceeds to do the act, such circumstances evidence a conscious failure to observe due care." *Wannamaker v. Traywick,* 136 S. C., 21, 134 S. E., 234, 235.

When one consciously fails to do an act which he ought to do and his omission results in injury to his fellow, that conscious act of omission is just as much blamable as the affirmative doing of some act resulting in injury to another, when the doing is consciously proceeded with.

The seventh exception complains that the verdict for punitive damages was excessive. Under the authority of *Duncan v. Record Publishing Company,* 145 S. C., 196, 143 S. E., 31; *Veronee v. Charleston Consolidated Railway Co.,* 152 S. C., 178, 149 S. E., 753, and many other cases too numerous to cite, this exception must be overruled. We have said repeatedly that we have little, if anything, to do with the amounts of verdicts. The proper amounts to be rendered, as either actual or punitive damages, are left, under our law, almost entirely to the trial jury and the trial Judge. We have no legal right to disturb the verdict in this case. If we had any such right, we would not be disposed to do so, for, under all the circumstances, we could not honestly say that the amounts awarded by the jury were in the least excessive.

The judgment of this Court is that all the exceptions be overruled, and the judgment below be affirmed.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES STABLER and CARTER concur.

MR. JUSTICE COTHRAN (dissenting) : The only allegation of the complaint that casts even a shadow upon the otherwise sole unclouded purpose of the pleader to allege a joint tort upon the part of the defendants, is contained in the eleventh paragraph: "That all of *said* acts and omissions on the part of the defendants and the agents and servants of the defendant company were negligent, willful, wanton and grossly negligent and they caused and contributed to the injury aforesaid of Robert S. Weeks, both jointly and concurrently."

After setting forth "said acts and omissions" in the clearest manner possible as the acts and omissions of the defendants jointly, the eleventh paragraph was obviously inserted for the purpose of characterizing them as negligent, willful, etc., and not for the purpose of a separate allegation of wrongful acts by servants of the company other than the one named.

If it could possibly be construed as such, it could only refer to the servants who are alleged in the fifth paragraph of the complaint to have assisted Doughty in changing the wires, as to whom there is not the slightest evidence of negligence.

This being true, it was error to charge the jury that a verdict could be rendered against the company and in favor of the defendant, Doughty, for the reason that the alleged cause of action was based upon a joint tort of these defendants; such a verdict, under the well-recognized rule declared in the leading opinion, being illogical, and for the further reason that thereby the jury was permitted to find a verdict against the company based upon a supposed act of negligence on the part of the company or of some other agent than Doughty.

I think that the matter is conclusively settled by the two cases of *Durst v. R. Co.,* 130 S. C., 165, 125 S. E., 651, and *Pendleton v. R. Co.,* 133 S. C., 326, 131 S. E., 265, 267.

In the former it was alleged that the plaintiff was injured by a lamp that slipped from the hands of a flagman who was attempting to detach it from the bracket from which it was suspended, and fell into the plaintiff's lap, in consequence of which she was injured. There was no general allegation of negligence. "Over the objection of the defendant railway company, the Circuit Judge allowed other evidence than that tending to sustain the specific act charged to the flagman, which evidence tended to show that the lamp was out of date, that it should have been fixed long ago, and that the fall was due to the negligence of some other servant than the flagman." The Supreme Court held that such evidence was incompetent and should have been excluded, and that the plaintiff should have been confined to the proof of the facts alleged in her complaint, upon which she based her right to recover.

In the latter the Court said:

"And since the injured party's right to join two or more alleged tort-feasors in one action may be sustained only upon the theory of joint liability, when a plaintiff joins two or more alleged wrongdoers as parties defendant in one action, such joinder in itself necessarily implies that he has elected to treat his injury as a joint tort, and to recover upon the theory of joint liability. Such election to sue upon the theory of joint liability logically involves the relinquishment of the right in that action to raise a 'separable controversy' with any one defendant and to recover against one or more separately upon the theory of several liability in any sense other than that the plaintiff in such joint action is not bound to recover against all, but may recover against one or more and not against others. * * *

"But since the very joinder of parties defendant in a tort action is *prima facie* an election to treat the injury as a

tort for which such parties are liable upon the theory of joint liability, it is obvious that there is no necessity for such motion to elect except in a case where the complaint is susceptible of no other reasonable construction than that the plaintiff is attempting in the same action both to recover separately against one or more of the defendants upon the theory of several liability and to recover against them jointly upon the theory of joint liability."

The jury having found a verdict in favor of the defendant Doughty, the complement of the company in the alleged joint tort, it necessarily follows that the alleged joint tort has failed of maturity. The verdict logically therefore is referable to a separate and independent wrongful act of the company, or to a separate and independent wrongful act of some servant or agent other than the defendant Doughty. The leading opinion manifestly proposes to sustain it upon the separate and independent wrongful act of Bullard, the superior of the defendant servant Doughty. This as the cited cases hold cannot be permitted.

Assuming, however, for the sake of argument that it would be permissible, in an action charging a joint tort against the master and a particular servant, to sustain a recovery of damages based upon an independent wrongful act of the company or of another servant, not included in the allegations of the complaint, I do not think that the evidence waranted the submission to the jury *of even the issue of negligence* on the part of the company which is claimed to have existed through the conduct of Bullard, a construction engineer of the power company.

It is true that the defendant did not move for a nonsuit or a directed verdict upon this ground, nor upon the ground of the contributory negligence of the plaintiff; but it is manifest that if there was no evidence of negligence on the part of the company, either by reason of its own direct or attributed act, no actual damages were recoverable, and as a consequence no punitive damages.

The existence of negligence is dependent upon the relation which the defendant sustained to the plaintiff and its duty to him flowing from that relation.

As is well expressed in 20 R. C. L., 46: "It is essential to liability, then, that the parties shall have sustained a relationship recognized by law as the foundation of a duty or care."

Largely determinative of the issue of duty or care is the complementary rule thus expressed by the same authority at page 11: "It is an undeniable philosophic truth * * * that a person's liability for his acts, depends upon their tendency, under the circumstances, known to him." And at page 13: "On the other hand, an injury is not actionable if it could not have been foreseen or reasonably anticipated." Or in the oft-quoted and apt declaration of Chief Justice Gibson of Pennsylvania, "Precaution becomes a duty only where there is a reasonable apprehension of danger."

It is substantially declared in *Barrett v. Lake Ontario Co.,* 174 N. Y., 310, 66 N. E., 968, 61 L. R. A., 829: In order however to impute knowledge of a dangerous thing or place, the danger must have been such as is recognized by common experience, or might reasonably have been expected by a person of ordinary prudence and foresight.

In the leading opinion the following very clear expression of the law from 20 C. J., 355 is approved: "The exercise of a sufficient degree of care requires a careful and proper insulation of all wires and appliances in places where there is a likelihood or reasonable probability of human contact therewith, and the exercise of due care to make and keep insulation perfect at places where people have a right to go on business or pleasure."

In *Foster v. Union,* 129 S. C., 257, 123 S. E., 839, 842, the Court said: "It is elementary that the foundation of liability for negligence 'is knowledge—or what is deemed in law to be the same thing: Opportunity by the exercise of reasonable diligence to acquire knowledge—of the peril which subsequently results in injury.'"

Further the Court said: " * * * the act here relied. on to establish actionable negligence must meet the further test that it was an act or omission, from which, in the exercise of due care, danger of injury to those engaged in a legitimate use of the streets, etc., might reasonably have been anticipated or foreseen."

See also *Green v. R. Co.*, 131 S. C., 124, 126 S. E., 441, 38 A. L. R., 1448.

In *Austin v. Public Service Company*, 299 Ill., 112, 132 N. E., 458, 461, 17 A. L. R., 795, it was held that in order to charge with liability a person engaged in the business of handling electric current, it is necessary that the injury which results from such dangerous agency be one which a person of ordinary prudence, in the light of the surrounding circumstances, would reasonably and naturally have anticipated. The Court said: "In order to charge a person engaged in the business of handling electric current with liability, it is necessary that the injury which results from such dangerous agency be one which a person of ordinary prudence, in the light of the surrounding circumstances, would reasonably and naturally have anticipated."

In *Bunten v. Eastern Co.* (Minn.), 228 N. W., 332, it was held, quoting syllabus:

"Company, without reasonable cause to anticipate persons will come in dangerous proximity to wires, is not negligent in failing to place wires higher. * * *

"Company maintaining high tension wires where it has no reasonable cause to expect people will go need not provide insulation or other safeguards."

In *Love v. Virginian Power Co.*, 86 W. Va., 393, 103 S. E., 352, 355, the Court said: "Cases holding that such a company has breached no duty owed to a plaintiff injured by contact with its wires generally are distinguishable from those just cited upon the ground that the accident was of such a nature that the company in the exercise of reasonable care did not know and could not reasonably be expected to

anticipate the presence of plaintiff at the point where the injury was received, or because the latter was aware of the danger and took the risk on his own responsibility." (Citing numerous cases.)

The ruling principle is quite well expressed in *Thompson v. Lamar* (Mo. Sup.), 17 S. W. (2d), 960, 961, as follows: "Maintenance of uninsulated high-voltage wires in close proximity to place where lawful presence of persons is reasonably anticipated, and where they may likely come in contact with wires, is negligence *per se.*"

The case of *Williams v. Sumter*, 149 S. C., 375, 147 S. E., 321, was decided upon the principle that where the defendant had no reason to anticipate an injury from the location of its electric wires, there was no liability.

(By what I shall hereinafter advert to, in the conduct of the plaintiff, I do not wish it understood that any reliance is intended to be placed upon it as contributory negligence on his part. It is intended to demonstrate that his conduct was so careless, moved by his own volition, at a place and in a manner not reasonably to have been expected by the company, as to place the case beyond the possibility of evidencing any duty which the company owed him under the foregoing principles of the law of negligence.)

The undisputed facts of the case are these:

There was maintained by one Beck, at a point a few miles from Sumter, a place of amusement, consisting of camping grounds, picnic grounds, a swimming pool, and a dance hall, frequented by the public generally, "upon pleasure bent"; the principal building was occupied by a store on the ground floor and a dance hall on the second floor; it was located very near the public highway, the end of the building fronting it; on each side of the hall was a veranda, extending the length of the hall and at right angle with the front; they were used by the visitors generally; the power line of the company was located on the edge of the highway, and as it passed the front of the building, it was about 5 feet above the level of the

floor of the veranda, and 19 inches from and 2 feet above a 3-foot banister at the highway end of the veranda; the plaintiff was sitting on the banister, one leg upon it and the other on the inside of the piazza, leaning against a post at the corner of the piazza; the wire was 19 inches away and 2 feet above him; moved by some impulse, we know not what, which he does not explain, did not know, he reached across this space and caught hold of the wire and received his injury; he admits in his testimony that he knew that the wire was there, saw it, saw that it was not insulated, and knew that if he touched it he would receive an electric shock.

The relation between the plaintiff and the company may be analyzed thus: He was a member of the public lawfully upon the premises of the amusement proprietor; a great many people were accustomed to frequent the place; the defendant knew this, and it was supplying electricity to the proprietor; the plaintiff, while enjoying the amusements furnished, was entitled to reasonable care on the part of the company in operating so dangerous an element as electricity, to so conduct its business as not to injure him. That duty arose and continued while the plaintiff was so engaged, and necessarily did not exist when, while in a position of absolute immunity from any defect in the wires, he suffered injury by reason of his own voluntary, intentional act.

That the plaintiff was guilty of negligence in needlessly, heedlessly, without motive, voluntarily grasping the known uninsulated wire, appears too plainly for discussion. He was a young man, within two days of seventeen years of age, of more than ordinary intelligence; a student at the Citadel, an institution of very high grade; *he knew of the presence of the wire and that it was uninsulated;* it was not in his way, or in any wise obstructing his participation in the amusements and pleasures afforded by the resort; there was no reason in the world why he should have grasped the wire, and he was unable to give any excuse for his doing so; all that he could say was that he did not know why he did it;

that he simply reached up and caught hold of it. There was a feeble effort to lay the foundation for an inference of an accidental contact with the wire, by establishing his constant habit of gesticulation, which however fails as his admission that he intentionally grasped the wire, but could not explain why. If his act was inexplicable to him and intentionally done, how is it possible for the company to explain it, or reasonably to have anticipated what he himself could not explain and intentionally did?

If the plaintiff had accidentally come in contact with the wire while he was dancing, swimming, participating in any of the amusements and pleasures of the resort, or sauntering around as a sight-seer, there would be ground for holding the company responsible for not sufficiently protecting him against injury from such contact; but the facts do not present such a case. He had a right, of course, to sit upon the banister; he was where he had a right to be; the uninsulated wire was not in his path at all; it was doing him no harm; it became effective for harm *by his own voluntary, intentional act,* one of unquestioned negligence.

As the Court said in the case of *Green v. R. Co.,* 246 Pa., 340, 92 A., 341, 342, L. R. A., 1915-C, 151: "It is settled law that no liability results from failure to anticipate wrongful acts by others."

I apprehend that the same principle would apply to the *negligent* acts of others, unless it can be shown that they were *induced* by the primary act of the defendant, not simply that that act presented the opportunity or occasion for the negligence of such others. This principle, of course, would not be applicable to injuries sustained by immature children, under the attractive nuisance line of cases.

The only circumstance relied upon, except the lack of insulation on the wire, was the fact that a young lady, a few days before the plaintiff was hurt, had done the same thing that he did, and received a shock. Her conduct doubtless was of the same heedless character. It is not to be assumed that

the careless act of one is to be considered sufficient notice to the company that some one else will be guilty of the same careless act. It was, of course, the duty of the defendant to construct and operate its line with a view to the probability of injury to persons reasonably to be expected to come in contact with its wires. One sporadic act of injury by carelessness is certainly no notice to the company of such a custom as would reasonably call for precautions against a recurrence by some other person similarly heedlessly inclined.

If the company cannot be charged with the duty of anticipating such an event, it certainly could not be charged with the duty of insulating its wires.

The case does not at all present the feature so often appearing in cases of attractive nuisances, such as *Hayes v. Southern P. Co.*, 95 S. C., 230, 78 S. E., 956; *Renno v. R. Co.*, 120 S. C., 7, 112 S. E., 439.

See *Sexton v. Noll*, 108 S. C., 516, 95 S. E., 129, where the rule of reasonable anticipation is well expressed.

Besides, there is no evidence tending to show any negligence on the part of the defendant in not generally insulating its wires. There is evidence tending to show that it is the safer practice not to do so. Of course, if the circumstances are such as to reasonably require such insulation at a particular place, the failure to do so might be considered negligence.

Another ground for the denial of recovery in this case is that assuming the negligence of the company it is clear that the intervening, unconnected act of the plaintiff produced his injury. The principle is well illustrated in the *Foster case, supra.*

In speaking of the law of proximate cause, the Court said: "The injury to plaintiff could not have been anticipated without foreseeing the act of the father, or of some other person acting to the same end, in taking the house wire into the street by means of an extension cord, or other device. Obviously, the foresight which the law imputes to a tort-feasor

cannot extend to consequences brought about by the intervention of a responsible human being, where the act of the intervener breaks the chain of causation between the original wrong and for the injury complained of, and is in itself sufficient to constitute an efficient, responsible cause of the injury. Under the undisputed facts of this case the act of the father in carrying the house wire and lamp into Lybrand Street would seem clearly to meet the test of what constitutes such an efficient, intervening, proximate cause of an injury. It was not an act induced, produced or set in motion by the alleged negligent act of improperly placing the wires or by any other delict of the city. It was not an act, * * * which, in the discharge of the particular duty owed to the plaintiff, the city could have foreseen in the exercise of reasonable diligence. It was an act without which the plaintiff's injury could not have happened. * * * In that situation we think the act of the father was such an efficient, intervening, responsible cause of the plaintiff's injury as would as a matter of law make of that act the proximate cause of the injury and the alleged negligent placing of the wires in Lawson avenue merely the condition by which the injury was made possible and not a concurring proximate cause thereof."

In *Dudley v. Ry. Co.,* 110 S. C., 73, 96 S. E., 478, 479, the Court said: "If the owner maintains a dangerous agency upon his premises, the law imposes upon him the duty of anticipating such injuries as proximately result from his failure to safeguard the public from injury; but in discharging this duty he is only required to exercise ordinary care."

In *Cannon v. Lockhart Mills,* 101 S. C., 59, 85 S. E., 233, 234, it was held that when, in the sequence of events between the original default and the injury complained of, an independent cause intervened, the intervening cause be held ordinarily to have been the proximate cause. In this case the Court quotes with approval the following from *Insurance Co. v. Tweed,* 7 Wall., 44, 19 L. Ed., 65: "If the misconduct

is of a character which, according to the usual experience of mankind, is calculated to *invite or induce the intervention of some subsequent cause,* the intervening cause will not excuse him, and the subsequent mischief will be held to be the result of the original misconduct. This is upon the ground that one is held responsible for all the consequences of his act which are natural and probable, and ought to have been foreseen by a reasonably prudent man."

I concede that if the defendant was guilty of negligence in the location of an uninsulated wire, and that act induced or was the probable cause of the intervening negligent act of the plaintiff in grasping the wire, the causal connection between the initial act of negligence and the injury would not have been broken. I do not see how it is possible to come to such a conclusion from the facts of this case.

I concede also that if the act of the company, assumed to have been negligent, produced an impulsive, involuntary act on the part of the plaintiff in grasping the wire, there would be no ground for holding that the chain had not been broken; but here there was nothing unusual about the condition of the wire at the time the plaintiff grasped it, which could have produced such an impulse; in fact, it appears that he knew of its presence and condition which were not suddenly presented to him, and could not therefore have converted his intentional act into an impulse.

I have not considered to any extent the question of punitive damages for two reasons: (1) There is no evidence that under the circumstances the defendant owed the plaintiff the duty to protect its wires from his voluntary, intentional, uninduced act in grasping the wire; if there was no such duty, there could be no breach of it and consequently no right to damages, actual or punitive resulting from the injury sustained by the plaintiff. (2) That there is not a particle of evidence in the case warranting the infliction of punishment upon the defendant for damages resulting from a conscious disregard of its duty to the plaintiff.

For these reasons I think that the motion for a directed verdict in favor of the defendants should have been granted.